# WASHINGTON GAS LIGHT COMPANY *v.* DISTRICT OF COLUMBIA.

## ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

### No. 40. Argued October 16, 17, 1895. — Decided March 2, 1896.

The duty is imposed upon the Washington Gas Light Company by the terms of its charter, the nature of its business, and the uses to which gas boxes placed in the sidewalks of the city of Washington are put, as an appliance ordinarily used by the company to. connect its mains with a house where gas is to be used, to supervise and keep those gas boxes in order; and if an injury happens to a person by reason of one of those boxes being out of order and in need of repair and unsafe, and an action is brought against the District of Columbia to recover damages for such injury, and the Gas Company is notified and is given an opportunity to defend, and a trial is had resulting in a verdict and judgment for the plaintiff against the District, which the District is obliged to pay, the District has a cause of action against the Gas Company, resulting from. these facts.

In such action, for the purpose of ascertaining the subject-matter of the controversy between the person who was injured and the District, and fixing the scope of the thing adjudged, the entire record, including the testimony offered, may be examined.

The judgment against the District, rendered after notice to the Gas Company, and after opportunity afforded it to defend, is conclusive of the liability of the company to the District.

In July, 1879, Marietta M. Parker sued the District of Columbia to recover damages for an injury to her person, alleged to have been suffered from stepping into a certain "deep and dangerous hole" in the sidewalk of one of the streets of the city of Washington. The declaration contained all the essential averments necessary to fix liability on the corporation. Prior to the bringing of the suit, when Mrs. Parker first made demand against the District, the latter notified the Washington Gas Light Company, spoken of hereafter as the Gas Company, that it would be expected to indemnify the District for any amount which it might be compelled to pay to Mrs. Parker, and when the suit was commenced the Gas Company was also informed, and opportunity was afforded

that company to defend. The proffer was not availed of, although on the trial of the cause, which resulted in a verdict and judgment against the District for five thousand dollars, officers of the Gas Company testified, and the counsel of that company was present during a portion of the trial, but purposely abstained from taking part in the defence. The action now here was brought by the District of Columbia against the Gas Company to recover over the amount of the judgment obtained by Mrs. Parker against the District, and which had been paid by it. The cause of action relied on to sustain this recovery was briefly as follows: That "the deep and dangerous hole," averred by Mrs. Parker to have existed, and which she alleged to have been the cause of her injury, and upon which her recovery was had, was proven on the trial of her case to have been an open gas box placed and maintained in the sidewalk by the Gas Company for its own use and benefit, and which it was its duty to repair; that this duty had been grossly neglected by allowing the box to remain unrepaired, thus causing the injury for which the city had been held liable. The declaration, moreover, averred notice to the Gas Company, and the fact that adequate opportunity was given it to defend, and the failure of the Gas Company to act in defence of the suit. To this demand the defendant (the Gas Company) filed a plea of the general issue, and by stipulation it was agreed that it might thereunder avail itself of any defence which it might have.

On the trial of the cause, before a jury, testimony was introduced tending to show that the gas box or stop-cock box in question was placed by the Gas Company in the sidewalk, in the city of Washington, in 1873, this gas box being one of the customary appliances used by the company when connecting its mains with a house where gas was to be used; that this box consisted of an iron cylinder, four inches wide and two and a half feet deep, with an iron cover. The box served the purpose of affording access to a cock in the service pipe, which latter conducted the gas from the main of the company to the gas meter in the house, whence it was carried to the burners. By means of this box or cylinder, on removing the cover there

from with a key made for the purpose, the cock in the service pipe could be reached; and the gas be thus turned on or off from the house. It was, moreover, shown that this box was placed in the sidewalk so as to be level with its surface, and that the cover thereon was held in place by lugs which slipped into slots made for the purpose. In addition it was proven that the box was put in by the company in accordance with the general methods used for introducing gas, and in compliance with the form of structure pointed out by an ordinance of the Board of Common Council of the city of Washington, passed in March, 1868. Both parties introduced proof showing that the service pipe, the stop cock therein, and the gas box were put in at the request of the owner of the premises in front of which they were situated; that they were constructed by the Gas Company, which furnished the materials, and worked as any other plumber would have done, being paid therefor by the owner of the premises; and that in order to do this work, the company had first to obtain permission to open the street to make the requisite connections, and had paid to the District a permit fee of one dollar. There was, moreover, proof tending to show that when the gas box was first put in the work was skilfully done; that it was originally placed in a brick footway then existing and near the curbstone, but that subsequently the Board of Public Works of the District of Columbia widened the footway, and in consequence of this widening the gas box came to be about in the middle of the sidewalk.

Testimony was also introduced, tending to show that where the owners of private property paid the Gas Company the cost of laying lateral service pipes and connections with the street mains and discontinued the use of gas in the premises, they would not be permitted to remove the same; that an adjoining private property owner was never permitted to have a key to the gas box, and that the defendant has, so far as such property owners are concerned, maintained and exercised exclusive supervision and control of the same. There was evidence also introduced tending to show that the defendant had men employed whose duty it was to examine, about the first of

each month, the condition of the meters in every house throughout the District into which gas had been introduced by the defendant, and that it was the duty of these employés to notice and report whether the gas boxes in the sidewalks were uncovered or out of order. The evidence moreover tended to establish that the superintendent of the Gas Company, when his attention had been called to the fact that gas boxes needed repair, had often caused such repair to be done by having the covers put on or doing any other required work. To the contrary, proof was also introduced tending to show that after the gas boxes were put in the Gas Company took no further care or charge of them.

The District offered in evidence the record of the suit brought by Mrs. Parker and made proof that it paid the amount of the judgment therein rendered. The testimony which had been given by Mrs. Parker on the trial of that case was also offered in evidence and admitted over objection, although no exception was reserved. This testimony tended to show that the sole cause of the injury for which she sued and had recovered was an open gas box in which, whilst walking on the street, her foot had become engaged. The deposition of Mrs. Parker taken in the case on trial was also offered in evidence by the District, and contained the following description of the accident:

"The accident occurred in front of 121 C street N.E., about 5 o'clock in the afternoon of March 10, A.D. 1879. The immediate cause of the accident was an open gas box in about the centre of the sidewalk; it was a perfect trap, as it was upon a level of the sidewalk, except at the side I stepped into, and there was a part of a brick sunk at least an inch and a half below the level of the walk so that any one in walking along could not see but the pavement was level until, like myself, when too late. Had not the half of the brick been sunken the open hole would not have been so dangerous; for, upon stepping into the hole, I tried to step back, when I found my box-toe shoe fast in the hole, and the sunken brick let my heel down with my entire weight, one and one half inches more than would have occurred had the pavement been perfect around the gas box."

The District moreover, after proving the death of H. Clay Smith, a witness who had testified in the original suit, and the loss of the notes of his testimony, offered to prove by the stenographer who had taken the original notes what had been Smith's testimony. This was objected to, and on its being overruled, exception was reserved. The stenographer testified that Smith had on the original trial sworn that he lived within a few doors of the place where the Parker accident happened, and had noticed the gas box which caused the accident to be out of order "for two or three weeks prior to the accident to Mrs. Parker, and that he did not know how the top of the box came off, but he had noticed it."

At the close of the testimony offered in behalf of the District, the defendant company requested a peremptory instruction in its favor, which was refused and exception was taken. The plaintiff then asked for the following instructions : First. That the obligation of supervising and keeping the gas box in order rested on the Gas Company, and that if it had neglected so to do after actual notice of its being out of order, or after such condition had existed for a sufficient length of time to have enabled the company, with reasonable diligence, to have discovered it, the Gas Company was liable. Second. That if the company had notice of and opportunity to defend the original suit, it was bound by the judgment therein rendered. These instructions were given. The defendant company asked for several instructions, which were refused, and exceptions were reserved consequent on such refusal. They were, first, that the Gas Company was not obliged to keep the box in order ; second, that, even if it was originally so bound, the widening of the footwalk by the city and the consequent shifting of the box to the middle of the sidewalk, had relieved it of such obligation ; third, that if the jury found from the evidence that the injury of Mrs. Parker was caused in whole or in part from a defect in the sidewalk alongside of the gas box, the defendant should have a verdict ; fourth, if the jury found from the evidence that the injury for which Mrs. Parker recovered was caused by the fault of both parties to the suit, the defendant was also entitled to a verdict. This last request

the court declined to give on the ground that it was already covered by a general instruction given. The court in its general charge instructed the jury substantially as follows : That the primary duty rested on the Gas Company to repair and keep the gas box in order ; hence, if the District had been compelled to pay as a result of the negligence of the Gas Company in discharging its legal obligation, the District was entitled to recover the amount ; that notice having been given of the demand made by Mrs. Parker and of the suit brought by her, and an opportunity having been afforded the Gas Company to defend the same, the judgment in such suit was the thing adjudged against the defendant company as to the matters which it concluded. It also instructed that as the original action was for an accident caused by a " deep and dangerous hole," it was lawful and necessary to go beyond the face of the complaint and ascertain from the evidence whether the deep and dangerous hole referred to was the gas box of the defendant company ; that the jury were to determine by an examination of the testimony offered in that case whether the verdict in the first suit was alone based on the gas box ; if so, the District was entitled to recover. If, on the other hand, the jury found that the controversy in the first suit involved the question of liability on the part of the city for the gas box, and also for defective bricks around it, then it was the duty of the jury to ascertain whether the judgment which had been rendered against the city was because of the defective gas box or because of both the defect in the gas box and the bricks, and if the jury found that the judgment had been rendered in the former suit solely on the ground of the defective gas box, that judgment would be conclusive. If there was doubt on what ground the jury, in the previous suit, found its verdict, if the question of the gas box and bricks was before it, then the judgment would not be conclusive, and it would be an open question for the jury to weigh the evidence which might be produced on the subject irrespective of the former judgment. If in that contingency the jury was satisfied that the injury could not have happened but for the depression in the sidewalk occasioned by the bricks, or that the

injury was aggravated by that fact so that "they could not apportion the injury between the gas box and the sidewalk, quite a grave question presents itself." On this grave question the court instructed "if you can come to the conclusion that this depression in the sidewalk was one of the joint causes of the injury, I feel bound to say that I do not see how the District of Columbia could recover damages from the Gas Company. If, on the other hand, you are satisfied that the defect in the pavement played no conspicuous part in the injury, but that it was wholly due to the exposed condition of this gas box, then only one question remains, and that is whether the Gas Company was negligent in regard to the condition of that box, and whether its exposed condition was due to the negligence of the company." On the subject of negligence of the Gas Company, the court instructed that the former judgment did not conclusively fix upon the defendant the charge of negligence; that the negligence of the company might be ascertained from two conditions, either proof of actual negligence or of such failure to repair for a sufficient length of time as would justify the implication of negligence. There was a verdict and judgment for the plaintiff, the District of Columbia, and, on appeal, it was affirmed by the Supreme Court of the District, sitting in general term. The opinion of the general term is reported in 20 Dist. Col. 39. Thereafter the case was brought by error here.

*Mr. Walter D. Davidge* and *Mr. William B. Webb* for plaintiff in error.

*Mr. Sidney T. Thomas* and *Mr. Andrew B. Duvall* for defendant in error.

Mr. Justice White, after stating the case, delivered the opinion of the court.

The questions raised by the various assignments of error are, First, did the legal obligation primarily rest on the Gas Company to repair and keep the gas box in good order? Second, was that company liable over to the District in consequence

of its failure to do so? Third, was the testimony of Smith, the witness in the original suit, admissible? Fourth, was the judgment rendered against the District conclusive against the Gas Company?

We will consider these questions in the order stated.

*First.* *Did the legal duty rest primarily on the Gas Company to repair and keep the gas box in order?*

The Gas Light Company was incorporated by an act of Congress, approved July 8, 1848, and it was empowered. "to manufacture, make, and sell gas . . . to be used for the purpose of lighting the city of Washington, or the streets thereof, and any buildings, manufactories, or houses therein contained and situate, and to lay pipes for the purpose of conducting gas in any of the streets, avenues, and alleys of said city ; . . . *Provided, however,* That the said pipes should be laid subject to such conditions and in compliance with such regulations as the corporation of Washington may from time to time prescribe."

The trial court instructed the jury that the gas box was a part of the apparatus of the company, and hence it was its duty to exercise proper care over it and thus to prevent injury to persons using the sidewalk. The contention that this instruction was erroneous is based on the assertion that the gas box was not and could not become a part of the apparatus of that company, because under its charter only those things which were necessary in the manufacture of gas and which were needed to convey it after manufacture into and through the streets can be treated as part of its works. The proposition is without foundation. The plain object contemplated by the formation of the Gas Company was the supplying of the gas, to be by it manufactured, to consumers, and it is obvious that this could not be done without making a connection between the street mains and abutting dwellings. When such connections are made with the mains they receive from them and convey into dwellings highly inflammable material, which flows by an uninterrupted channel from the mains themselves into such dwellings. It must, therefore, have necessarily been contemplated that such connections with the

mains, as were from their very nature incidental to and inseparably connected with the consumption of gas, should be a part of the apparatus of the Gas Company and be under its control rather than under that of the city or the property owner. Indeed, the control by the Gas Company of the connection from its mains to the point of use is as absolutely necessary to make it possible for such company to carry out the very purpose of its charter as are the retorts and mains. Moreover the provision of the charter already quoted shows that it was thereby contemplated that the connections between the company's mains and the places where the gas was to be consumed should be made by the Gas Company and become a part of its apparatus. The charter does not confer the power to lay pipes upon those desiring a supply of gas, but gives such power to the company.

The danger of serious damage to the public at large and to the property of individuals and to the mains and other works, and apparatus of the company, by the intermeddling of third parties, would be precisely as great in the case of the lateral service pipes and the gas boxes placed in the sidewalks as in the case of interference with street mains. The necessity for affording protection to the company against such interference undoubtedly led to the enactment of the eighth section of the company's charter, wherein it is provided :

"That if any person or persons shall wilfully do, or cause to be done, any act or acts whatever, whereby the works of said corporation, or any pipe, conduit, plug, cock, reservoir, or any engine, machine, or structure, or any matter or thing appertaining to the same, shall be stopped, obstructed, impaired, weakened, injured, or destroyed, the person or persons so offending shall forfeit and pay to the said corporation double the amount of the damage sustained by means of such offence or injury, to be recovered in the name of the said corporation, with costs of suit, in any action of debt, to be brought in any court having cognizance thereof."

The authority of the company over the gas boxes and its correlative duty to supervise and keep them in order thus deduced from the terms of the charter, the nature of its

business, and the use to which the gas boxes are applied, is also sustained by authority. In *Commonwealth* v. *Lowell Gas Light Company,* 12 Allen, 75, 77, 78, the court in considering the question of what was the machinery and appliances of such a company, said:

'The mains or pipes laid down in the streets and elsewhere to distribute the gas among those who are to consume it were clearly a part of the apparatus necessary to be used by the corporation in order to accomplish the object for which it was established. They constituted a part of the machinery by means of which the corporate business was carried on, in the same manner as pipes attached to a pump or fire engine for the distribution of water, or wheels in a mill, which communicate motion to looms and spindles, or the pipes attached to a steam engine to convey and distribute heat and steam for manufacturing purposes, makes a portion of the machinery of the mill in which they are used. Indeed, in a broad, comprehensive and legitimate sense, the entire apparatus by which gas is manufactured constitutes one great integral machine, consisting of retorts, station meters, gas holders, street mains, service pipes, and consumers' meters, all connecting and operating together, by means of which the initial, intermediate and final processes are carried on, from its generation in the retort to its delivery for the use of consumers."

It would be unreasonable to infer that Congress, when it authorized the use of the streets or sidewalks for the purposes of the Gas Company's business, contemplated that the city of Washington or its successor, the District of Columbia, should keep in repair such apparatus, the continued location of which in the sidewalks of the city was permitted, not only as an incident to the right to make and sell gas, but also for the pecuniary benefit of the Gas Company. We conclude, therefore, that the duty was imposed upon the Gas Company to supervise and keep the gas box in repair. This duty not only does not conflict with the charter of the company, but on the contrary is sanctioned by its tenor, and is imposed as an inevitable accessory of the powers which the charter confers. Nor do we think that this duty was affected by the circum-

stances that the cost of the labor and materials used in the construction of the connection and gas box was paid by an occupant or owner of property who desired to be furnished with gas. As the service pipe and stop cock was a part of the apparatus of the company and was used for the purpose of its business, it is entirely immaterial who paid the cost, or might in law, on the cessation of the use of the service pipe and gas box by the company, be regarded as the owner of the mere materials. Certainly, it would not be claimed that if the box and its connections became so defective or out of repair that gas escaped therefrom and caused injury, that the company could legally assert that it was under no obligation to take care of the apparatus, because of the circumstance that it had been compensated by others for its outlay in the construction of the receptacles from which the gas had escaped.

The argument seeking to distinguish between the service pipe and other appliances of the Gas Company and the gas box, so as to make the company liable for the one and not for the other, is without merit. All these appliances were parts of the one structure, put in position and used together for the purposes of the company. There is nothing in the record even tending to show that such box was not one of the usual appliances of a gas company. It was manifestly treated as one of such instrumentalities, since it was put in the sidewalk as part of the works constructed for the purpose of introducing gas into the premises.

Nor are the foregoing conclusions weakened by the provisions of the city ordinance of March, 1866. That ordinance made it obligatory to construct service connections with the mains wherever the streets were ordered paved without regard to an existing or immediately expected necessity for such service. The purpose of the ordinance was to secure connections for both gas and water before streets were paved, thus obviating the tearing up of the pavement when once laid. Whether the company, under its charter and the laws relating thereto, would be compelled to make or allow to be made indefinite service connections with vacant property, need not be considered, because its determination bears no relation to the ques-

tion whether the company is bound to keep its appliances when constructed in safe condition. In leaving this branch of the case, however, we add that it is clear from the proof that the gas box in question was not constructed in consequence of a duty imposed by this ordinance. It was put in place by the company voluntarily, at the request of the property owner for service. The work was done by the company upon a permit given by the District allowing the opening of an existing street and the sidewalk thereon.

*Second. Had the District a cause of action against the Gas Company resulting from the fact that it had been condemned to pay damages occasioned by the defective gas box, which it was the duty of the Gas Company to supervise and repair ?*

An affirmative answer to this proposition is rendered necessary by both principle and authority. This court said in *Chicago* v. *Robbins*, 2 Black, 418, 422: "It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrongdoer." And the same doctrine is reiterated in almost the identical language in *Robbins* v. *Chicago*, 4 Wall. 657, 670.

The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers. In the leading case of *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24, 32, the doctrine was thus stated: "Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offence. The rule is, *in pari delicto potior est conditio defendentis*. If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offence. In respect to offences, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty,

and courts will not inquire into their relative guilt. But where the offence is merely *malum prohibitum*, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers."

In *Brooklyn* v. *Brooklyn City Railroad*, 47 N. Y. 475, 487, the same rule was applied, the court saying: "Where the parties are not equally criminal, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offence in which both were concerned in different degrees as perpetrators." All the cases referred to involved only the right of a municipal corporation to recover over the amount of the damages for which it had been held liable in consequence of a defective street, occasioned by the neglect or failure of another to perform his legal duty. The rule, however, is not predicated on the peculiar or exceptional rights of municipal corporations. It is general in its nature. It has been applied to public piers. *Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola*, 144 N. Y. 663; *Ib.* 134 N. Y. 461. To the right of a property owner to recover for damages which he had been compelled to pay for a defective wire attached by a Gas Light Company to the chimney of the owner's house. *Gray* v. *Boston Gas Light Co.*, 114 Mass. 149. To the right of a master to recover over the damages which he had been obliged to pay in consequence of a servant's negligence. *Grand Trunk Railway Co.* v. *Latham*, 63 Maine, 177; *Smith* v. *Foran*, 43 Connecticut, 244. Indeed, the cases which illustrate the rule and its application to many conditions of fact are too numerous for citation, and are collected in the text books. Wharton Neg. 246; 2 Thomp. Neg. 789, 1061; Sherman & Redfield Neg. (4th ed.) sec. 301; 2 Dillon Municipal Corporation, sec. 1035, and cases there referred to in note.

*Third. Was the testimony of Smith, the witness in the original action, admissible for the purpose of throwing light on the record of that action, in order to show the subject-matter there in controversy, and thereby to assist in the ascertainment of what was concluded by the judgment therein rendered?*

No question is made as to the adequacy of the foundation laid for the introduction of the secondary evidence; the sole controversy presented is the admissibility of the testimony. The bill of exceptions is general and specifies no particular objection. Clearly, even although it be conceded that the testimony of the witness given on the first trial was *res inter alios* as to the defendant in this action, and was, therefore, not admissible as going to establish substantive facts, yet obviously it was competent for the purpose of throwing light upon the record of the first action, and thus elucidating the determination of the question of what was the subject-matter covered by the judgment rendered in that action. The contention of the plaintiff was that the judgment in the first action was based on the liability of the District for the defective gas box, and was conclusive as against the defendant in this suit. The elementary rule is that for the purpose of ascertaining the subject-matter of a controversy, and fixing the scope of the thing adjudged, the entire record, including the testimony offered in the suit, may be examined. *Russell v. Place*, 94 U. S. 606, 609, 610; *Cromwell v. County of Sac*, 94 U. S. 351, 355, 356; *Lewis v. Ocean Navigation & Pier Co.*, 125 N. Y. 341, 348; *Littleton v. Richardson*, 34 N. H. 179, 188; Freeman on Judgments, § 273, and authorities there cited.

*Fourth. Was the judgment against the District rendered after notice to the Gas Company, and opportunity afforded it to defend, conclusive of the liability of the Gas Company to the District?*

As a deduction from the recognized right to recover over, it is settled that where one having such right is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter, and full opportunity be afforded him to defend the action. There is here no question of the sufficiency of the notice, or of the ample adequacy of the opportunity given the Gas Company to defend the suit had it elected to do so.

In both *Chicago v. Robbins* and *Robbins v. Chicago, ub. sup.*, this court, after announcing the rule as to the liability over in the language already quoted, also held that where, in the

first suit, proper notice was given to the party liable over, the first judgment would be conclusive against the latter in the action to recover over. In *Boston* v. *Worthington and others*, 10 Gray, 496, 498, 499, the language of the court in *Littleton* v. *Richardson*, 34 N. H. 179, 187, was quoted and adopted:

" When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not."

In *Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola*, 144 N. Y. 663, 665, the rule is thus stated: " It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim, and that the action is pending, with full opportunity to defend or to participate in the defence. If he then neglects or refuses to make any defence he may have, the judgment will bind him in the same way and to the same extent as if he had been made a party to the record. *Village of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550; *City of Rochester* v. *Montgomery*, 72 N. Y. 65; *Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40, 45; *Andrews* v. *Gillespie*, 47 N. Y. 487; *Chicago* v. *Robbins*, 2 Black, 418; *Heiser* v. *Hatch*, 86 N. Y. 614.".

The foregoing rulings are supported by many decided cases. *Portland* v. *Richardson*, 54 Maine, 46; *Veazie* v. *Penobscot Railroad*, 49 Maine, 119; *Reggio* v. *Braggiotti*, 7 Cush. 166; *Westfield* v. *Mayo*, 122 Mass. 100; *Littleton* v. *Richardson*, 34 N. H. 179, 187, and authorities there cited; *Westchester* v. *Apple*, 35 Penn. St. 284; *Catterlin* v. *Frankfort*, 79 Indiana, 547; see also 2 Dillon on Municipal Corporations, sec. 1035, and authorities there cited.

The contention of the plaintiff in error, however, is that although it be conceded that the judgment rendered against

the District in the first suit is conclusive, yet the judgment in this action to recover over should be reversed for the following reasons:

First, because giving to the judgment first rendered all the effect to which it is entitled, it did not conclude the question of whether the Gas Company was negligent. And that aside from the effect of the judgment there was no evidence tending to show negligence, except the testimony of the witness Smith, which, if admissible to aid in the ascertainment of what was the thing adjudged by the judgment in the former action, yet was not competent to establish the existence of negligence as a substantive fact, apart from the probative force of the judgment itself. Second, that the judgment in the first suit was not conclusive as to whether the broken brick (for which the Gas Company was clearly not liable) had contributed to the accident, and therefore there was error in this particular in the instruction given by the trial court to the jury.

As to the first of these two contentions, the trial court instructed the jury that, although the judgment in the first action was binding on the Gas Company, it was not conclusive as to the negligence of that company, but that such negligence could be inferred by the jury from the testimony of Smith, thus treating that testimony as possessing intrinsic proving power. Both these rulings were erroneous. The testimony of Smith taken in the first suit was *res inter alios*, and therefore incompetent against the Gas Company as independent testimony. The fact that it was admissible for the purpose of determining the scope of the thing adjudged in the suit in which it was given, did not justify its being used for a distinct and illegal purpose. Error, however, in this particular was in no sense prejudicial if the judgment in the first action conclusively established the negligence of the Gas Company. The liability of the District for the injury inflicted by the defective gas box depended on whether it had been guilty of negligence. But the neglect of the District to repair the gas box being one of omission as distinguished from the active doing of a negligent act, this

negligence, in the absence of a statutory rule to the contrary, could only have resulted from two conditions of fact — failure to repair after due notice of the defect, or proof of the existence of the defect for a sufficient lapse of time so as to justify the implication of knowledge and the resulting presumption of negligence. The elementary rule is thus stated in Dillon on Municipal Corporations, (§ 1024,) where a copious list of adjudicated cases is found : "Where the duty to keep its streets in safe condition rests upon the corporation, it is liable for injuries caused by its neglect or omission to keep the streets in repair, as well as for defects occasioned by the *wrongful acts of others;* but as, in such case, the *basis of the action is negligence, notice to the corporation of the defect* which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it, is essential to liability."

In the action against the District there was no evidence tending to show actual notice of the uncovered gas box. Indeed, the only proof tending to show negligence was the testimony of the witness Smith that the gas box had been observed by him to be uncovered for a considerable time prior to the accident. The verdict, therefore, against the District necessarily determined that the defect in the gas box had existed for such a length of time as to impute negligence to those whose duty it was to keep it in repair. The finding of this fact in the first action was an essential prerequisite to a judgment against the District. The length of time required to imply knowledge and negligence on the part of the District is also sufficient in law to imply such knowledge and negligence on the part of the Gas Company. It follows, therefore, that the judgment against the District conclusively established a fact from which, as the duty to repair rested on the Gas Company, its negligence results.

The proposition that the judgment, although conclusive, does not determine the negligence of the Gas Company, is a mere sophistry, since, on the one hand, it admits the estoppel resulting from the judgment, and on the other denies a fact

upon which the judgment depends, and without which it could not exist. It is true that in *Chicago City* v. *Robbins, ub. sup.,* in speaking of the conclusiveness of the judgment rendered against the city, the court said (p. 423): "Robbins is not, however, estopped from showing that he was under no obligation to keep the street in a safe condition, and that it was not through his fault the accident happened." But in that case the liability of the city rested on actual notice of the defect in the street and not on implied negligence based on the continued existence of the defect which caused the injury; therefore the essential fact on which the judgment against the city rested did not as a legal consequence imply negligence on the part of Robbins. Here, of course, a different state of fact gives rise to a different legal result. *City of Rochester* v. *Montgomery,* 72 N. Y. 65; *Carpenter* v. *Pier,* 30 Vermont 81, 87; *Village of Port Jervis* v. *First National Bank of Port Jervis,* 96 N. Y. 550.

The error which it is asserted the trial court committed on the subject of the broken brick at the side of the gas box, and its alleged contribution to the accident, may be conceded without creating cause for reversal. There was no evidence tending, either in the first action or in this, to show actual notice to the District of the defective brick, nor was there evidence tending to show the existence of the defect, for such length of time as to impute knowledge and negligence to the District. One or the other of these conditions being essential to establish negligence and thereby render the District liable for any accident to which the broken brick may have contributed, it follows that in neither of the actions was there any evidence which would have supported a judgment against the District because of the defective brick.

*Judgment affirmed.*