**31 P.(2d) 697**

**COLLIER v. UNION INDEMNITY CO.**

No. 3846.

Supreme Court of New Mexico.

April 3, 1934.

Francis C. Wilson and George E. Kessler, both of Santa Fé, for appellant.

Gilbert & Hamilton, of Santa Fé, for appellee.

ZINN, Justice.

From a judgment sustaining a demurrer to appellant's amended complaint and dismissing the action, this appeal is prosecuted.

We treat the parties here as they were below; that is, plaintiff and defendant.

The defendant is a corporation organized to transact a general insurance and surety business. On or about November 4, 1926, the defendant entered into a contract of insurance with the plaintiff. The defendant agreed to indemnify the plaintiff against loss from liability imposed by law for damages on account of bodily injuries accidentally suffered by any person not employed by the insured during the construction of certain sewers for the city of Santa Fé. The plaintiff was a contractor doing business under the name and style of the Collier Construction Company. He was engaged in the construction of a sewer under a contract with the city of Santa Fé. He had agreed to save the city harmless from any liability which might result from the construction of the sewers covered by his contract. The sewers were to be constructed in the streets of the city.

On February 6, 1927, one Margaret Johnson was injured by reason of falling into a sewer trench under construction by the plaintiff. She made claim against the plaintiff for damages suffered. The plaintiff notified the defendant of the claim and of the accident and injury, and the defendant employed the firm of Gilbert & Hamilton, attorneys at law of Santa Fé, to represent it in the matter. Some

negotiations as to settlement were entered into, but resulted in no agreement. On February 25, 1927, Margaret Johnson brought suit against the city of Santa Fé and the Collier Construction Company for damages. The plaintiff called upon the defendant to represent and defend him in the proceeding. The defendant responded and employed Attorney Carl H. Gilbert of the firm of Gilbert & Hamilton of Santa Fé. He filed a plea in abatement for the reason that there was no such legal entity as the Collier Construction Company; the true name of the contractor was James Collier, the plaintiff here. The court sustained the plea and quashed the writ of summons.

Thereafter in the same cause Margaret Johnson amended her complaint and made the plaintiff a party defendant, but no service was obtained upon him. The defendant made no further effort to represent or to assist Collier in the case. The case proceeded to judgment against the city of Santa Fé in the sum of $10,000, which judgment was affirmed by this court. 35 N. M. 77, 290 P. 793. The city of Santa Fé then filed suit in the United States District Court for the District of New Mexico against plaintiff and the American Surety Company of New York, setting up a cause of action based upon the Johnson judgment seeking recovery in the sum of $10,000, together with interest, costs, and attorneys' fees, aggregating $13,225. Collier notified the defendant of the institution of this cause with the request to defend him pursuant to the contract of insurance. The defendant failed and refused to appear and defend the plaintiff. The plaintiff then compromised

and settled this suit with the city for the sum of $12,182.49, which amount has been paid, satisfied, and discharged, and the suit of the city against the plaintiff, in the United States District Court, has been compromised, paid, satisfied, and discharged.

The complaint also alleges that Margaret Johnson did not fall within any exception named in the policy and was such a person for whose accidental injuries the defendant obligated itself to indemnify.

There is contained in the complaint the allegation that the defendant has failed and refused to pay the plaintiff the loss incurred by him, and that the plaintiff has complied with all the terms and conditions of the contract that are obligatory upon him to do and perform as conditions precedent.

The plaintiff prays judgment in the sum of $5,000, the penalty of the bond, and the further sum of $2,750 for attorneys' fees, costs, incurred in the case in the United States District Court and interest, and for the additional sum of $1,000 for attorneys' fees in this case.

Attached to the complaint, as exhibits, we find the insurance contract, the judgment in favor of Johnson, and the findings of fact and conclusions of law made by the district court in support of the Johnson judgment. From the findings of fact it appears that Margaret Johnson, while proceeding along the street in a cautious and careful manner, in attempting to pass by a trench digging machine which Collier, or his agents and servants, had left in the public street, the ground along the pathway gave way under her foot. This

pathway had been generally used by pedestrians in passing along the street, after the partial excavation of a trench had been effected. She fell into the trench and on a boom, upon which boom there were pieces of sharp and jagged edged iron being part of the mechanism for digging the trench. As a result of being so precipitated into the trench and upon the boom, she was injured.

The court found that Collier and his agents and servants failed to exercise usual and proper care to safeguard the public in the prosecution of the work of excavating for the sewer line. The negligent acts on the part of Collier, or his agents and servants, are specifically described in the court's findings.

It is manifest from the court's findings of fact in the state case, which the demurrer admits to be true, that the negligent acts of Collier, his agents or servants, in failing to exercise usual and proper care to safeguard persons traveling along the pathway, was the proximate cause of Miss Johnson's injuries.

The defendant demurred to the complaint for the following reasons:

First. That the complaint fails to show that jurisdiction was ever obtained over the plaintiff in the action brought by Margaret Johnson. That the complaint fails to allege facts sufficient to show that the plaintiff performed any of the acts either in the Johnson suit or the suit of the city of Santa Fé in the federal court which, by the provisions of the policy, are made conditions precedent to the creation of an obligation on the part of the defendant to defend either of said actions. That it affirmatively appears from the complaint that the action brought by the city of Santa Fé against the plaintiff included claims for attorney's fees and other items of damage constituting liabilities not insured against by the policy of insurance. That the complaint fails to allege sufficient facts to show that the action brought by the city of Santa Fé was brought to enforce a liability imposed by law upon the plaintiff for damages on account of bodily injuries accidentally received, or that said action was of a nature which the defendant was obligated to defend under the provisions of the policy of insurance;

Second. That it affirmatively appears from the complaint that no final judgment has been rendered against the plaintiff on any cause of action for liability insured against by the policy of insurance, because the complaint fails to allege facts to show that the damages sued for constitute a loss which was either (a) sustained by the plaintiff or (b) paid for in money by the plaintiff or (c) paid in satisfaction of any judgment against the plaintiff after actual trial of the issue. That no facts are alleged to show that the defendant gave its written consent to the settlement of the action brought by the city of Santa Fé against the plaintiff and the American Surety Company. That no facts are alleged to show the existence of any liability of the plaintiff to pay any portion of the judgment recovered by Margaret Johnson against the city of Santa Fé.

Plaintiff maintains the sufficiency of his complaint most strongly on the theory that it discloses a breach of defendant's contract obligation to defend him in the Johnson case; which breach, it is claimed, operated to waive

or release various of the contract restrictions or limitations upon his right to indemnity.  •

Considering the findings in the Johnson Case, as exhibited in this complaint, it clearly appears that the negligence for which Johnson recovered was that of the plaintiff. Defendant does not deny that Collier was answerable over to the city, as for exoneration, on principles laid down in Chicago v. Robbins, 67 U. S. (2 Black) 418, 422, 17 L. Ed. 298; Robbins v. Chicago, 71 U. S. (4 Wall.) 657, 670, 18 L. Ed. 427; Washington Gaslight Co. v. Dist. of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712; and in many other decisions. Defendant contends that the judgment itself did not conclude plaintiff, either as to his negligence or as to the damages, and that plaintiff did not really become involved until the city sued him.

This, defendant urges, results from the fact that the city did not give plaintiff notice to defend the Johnson suit.

Plaintiff's position is that "notice * * * and an opportunity to appear and defend" are enough to estop the person answerable over, "to contest the justice of the claim in the suit against himself, after having neglected or failed to show its injustice, in the suit against the person to whom he is responsible over." 34 C. J. "Judgments," § 1463. The general principle is usually stated thus.

But it will be found that the authorities are not uniform as to what will constitute sufficient notice of the suit and opportunity to defend. Id., § 1465.

Defendant cites a number of decisions holding that it is essential that the person sued must request his indemnitor to take charge of the defense and expressly notify him that, if he fail, he shall be held responsible. Most of these arose under covenants of title, and such is perhaps the prevailing rule in that class of cases. We seek the rule in tort cases.

Plaintiff relies mainly on Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712, and Robbins v. Chicago, 4 Wall. 657, 674, 18 L. Ed. 427. The former, standing alone, would not be highly persuasive. The latter seems squarely in point, a leading case, and a high and persuasive authority.

Defendant relies strongly on City of Boston v. Brooks, 187 Mass. 286, 73 N. E. 206. In this case the court failed to mention, if it considered, the authorities.

Placing the contention on the basis of reason, defendant says that the person sued must have the right to make his own defense, in his own way, without interference, and that the person answerable over cannot, on that account alone, interfere with the defense, much less take it over entirely. Hence, it contends, until the person sued has requested defense by the person answerable over, the latter, having no right, has no opportunity to defend.

██ We doubt if any conflict of authority can be found as to the first part of this argument. A party sued singly is not compelled to submit to interference in his defense. He may say to his indemnitor, "I insist on handling this defense myself." If he does say that, he cannot hold his indemnitor responsi-

ble for the results. Consolidated, etc., Co. v. Bradford, 171 Mass. 127, 50 N. E. 464, 68 Am. St. Rep. 409. On the other hand, if he says nothing, should it not be presumed, as it was in the Robbins Case, that a tender by his indemnitor to take over the defense would have been accepted? The court said in that case: "Knowledge of the pendency of the suit in the most authentic form was brought home to him, and the legal presumption is that he knew that he was answerable over to the corporation, and if so, it must also be presumed that he knew he had a right to defend the suit."

Of course, the "right to defend the suit" cannot mean an absolute right. It must mean the right to defend it as a condition to being bound by the result.

So the conflict of authority as to "opportunity to defend" seems to go, not so much to substance, as to form. According to the one view, the party sued must take the initiative; according to the other, the party answerable over must. Thus viewed, the question is of minor importance. We deem it wise to follow Robbins v. Chicago, supra. See, also, Missouri Pacific Ry. Co. v. Twiss, 35 Neb. 267, 53 N. W. 76, 37 Am. St. Rep. 437; City of Lansing v. D., L. & N. R. Co., 129 Mich. 405, 89 N. W. 54, 55.

We conclude that the judgment against the city in the Johnson Case was controlling upon the plaintiff, that the favorable ruling on the plea in abatement was an empty victory, and that defendant left plaintiff enmeshed in litigation which might result, as it did, in casting plaintiff irrevocably in damages greatly exceeding the amount of his indemnity.

But, even if the Johnson judgment was conclusive of plaintiff's liability over, as we hold it was, defendant urges that its liability was not thereby concluded. It invokes condition "c" of the policy, which is as follows: "Condition C. If thereafter any suit is brought against the assured to enforce such a claim for damages, the assured shall immediately forward to such Executive Office of the Company every summons or other process as soon as the same shall have been served on him, and the Company will defend such suit, whether groundless or not, in the name and on behalf of the assured; The expense incurred by the Company in defending such suit, including costs, if any, taxed against the assured, will be borne by the Company whether the verdict is for or against the assured irrespective of the limits of liability expressed in the Policy. In addition to the payment of expenses and costs as provided herein, the Company will reimburse the assured for interest accrued on such part of the amount of the judgment after entry and payment thereof as shall not exceed the limits of liability expressed in the Policy, whether or not the amount of such judgment shall exceed the amount of the Company's liability as expressed in the Policy. The Company shall have the right to settle any claim or suit at any time"—and contends that it is only in a suit against the assured, and after service of process upon him that the duty to defend arises, and that such defense must be in the name and on behalf of the assured, and cannot be

in the name or on behalf of any one else, in this case the city.

The defendant argues that the plea in abatement interposed in the case of Johnson v. City of Santa Fé and Collier Construction Co. was sustained, and it had therefore fully performed its duty.

This is to urge a narrow and technical interpretation where a liberal rule is called for. Nikolich v. S. N. P. J., 33 N. M. 64, 260 P. 849. The contract is mutual. Ordinarily the rights of both parties are involved when an injured party makes claim. The assured has not only bought and paid for a defense. He has surrendered his right to defend himself, to the end that the insurer may have full control. This is a large surrender, where the liability of the insurer is limited, and that of the assured is open. It calls for good faith and diligence. The responsibility primarily assumed is to defend the assured against the charge and total amount sued for; its own defense is incidental. If this were not the intent of the contract, it is the necessary result of it. The courts could not permit counsel to appear nominally for the assured, but actually in the interest of another. The able and highly honorable counsel for the defendant would unhesitatingly reject such an employment.

Defendant admits that the city might have demanded a defense by Collier and have concluded him thus by the judgment. Yet it so interprets its undertaking that the plaintiff could not have called upon it to furnish the defense. It would seem to follow conversely that the defendant could have been excluded from the case. We cannot accede to this view.

It is entirely at variance with the spirit of the contract and the mutual obligation of the parties. It will not do to regard condition "c" merely as a protection to the insurer. It raises a high obligation to the assured. The insurer is thus enabled to safeguard its own interests, it is true, but only as it secures those of the assured.

It is just as wide of the mark, then, to urge that plaintiff did not call upon defendant to tender its services in defense of the city, as it would be to urge in an ordinary case that the assured did not call upon the insurer to file timely answer to the complaint. Plaintiff called upon defendant to assume charge of the case, not to file a plea in abatement or to take any other particular step.

Whether the defendant continued in the case may not have altered the result. The defendant was fully aware of the facts upon which the Johnson Case was predicated and the consequences following judgment against the city of Santa Fé. Collier could rely upon the defendant's appearance in court to protect his interests. The defendant was satisfied to rest on its oars when the plea in abatement had been sustained. Collier was the insured. The defendant did appear and defend the Collier Construction Company, to which, for aught the record shows, the defendant was under no legal obligation to defend. So we have the defendant failing to make a defense when the known situation called for one; a failure really more harmful than an original refusal. Assumption of the defense will lull the assured into a sense of security. Refusal to defend will put him on his guard.

278

If the latter is a breach of the contract, the former must be.

■ Defendant concedes that a wrongful refusal by the insurance company to defend an action against the insured would constitute a waiver by the company of the "no action clause" and also of the provision of condition "d" of the policy prohibiting the insured from voluntarily settling claims except at its own expense; such being, as he concedes, the holding in St. Louis Dressed Beef Co. v. Md. Casualty Co., 201 U. S. 173, 26 S. Ct. 400, 403, 50 L. Ed. 712, wherein the policy was in all material aspects the same as the one in the case at bar.

In the Dressed Beef Co. Case, the policy covered loss from common-law or statutory liability for damages on account of bodily injuries accidentally suffered by any person or persons and caused through the negligence of the dressed beef company or its employees. A liability arose under the policy, and the dressed beef company was sued for damages and notified the casualty company of the suits, but the latter refused to defend. Thereupon the dressed beef company settled the suits without a trial. The case came to the United States Supreme Court on certificate from the Circuit Court of Appeals for the Eighth Circuit which certified for decision certain questions.

This decision, in which Mr. Justice Holmes delivered the opinion of the court, is farther reaching than is suggested. The principle of waiver was admitted because the matter was so presented "in the language of the question" of the lower court. But the real principle set forth was that a breach by the insurer relieved the assured of these restrictive provisions of the contract. As the opinion discloses, the substantial difference between the two theories would be nil.

"The sole difference would be in the form of the declaration. In either case the plaintiff would declare upon the policy, only the breaches assigned would not be the same. In the former, the breach would be the refusal to defend; in the latter, the refusal to pay. * * * The defendant, by its abdication, put the plaintiff in its place, with all its rights. To limit its liability as if its only promise was to pay a loss paid upon a judgment is to neglect the meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle. The substance of the promise is to pay a loss which the plaintiff shall have been compelled to pay, after such precautions and with such safeguards as the defendant may insist upon. It saw fit to insist upon none."

Mr. Justice Holmes then points out that the "no action" clause contemplates performance, not breach, of the contract, and, in case of the latter, operates not literally, but merely according to its spirit. He rejects the idea that after the refusal to defend "the plaintiff should be bound to try the case against itself, although it should be plain that by a compromise it could reduce its claim on the defendant as well as its own loss."

This principle we think applicable here. When the city sued the plaintiff, he was under no contract obligation to notify the defendant. It had already been called upon to defend him within the meaning of condition "c" and had "abdicated." The time was past when there was any defense to be made. He was at liberty to proceed to make such bona fide compromise as he could. The "no action" clause had been released, or, if you will, had been fulfilled; the "judgment after actual trial of the issue" having been rendered in the Johnson Case, as far as plaintiff's liability was concerned.

Applying this principle, we do not rewrite the contract, substituting "indemnity for liability" for "indemnity for loss," as is the charge against those decisions, constituting a minority, which consider the assumption and carrying on of the defense a waiver of the "no action" clause. Ann. 37 A. L. R. 637. We merely interpret the contract and hold the insurer to its obligations. It cannot claim its benefits after having refused its burdens. As Mr. Justice Holmes said, " * * * the defendant could not set itself free by so simple a device."

Thus it results that the city's suit against plaintiff is of a minor importance. A cause of action might have been stated without mention of it. Whether plaintiff, when so sued, followed condition "c" of the policy and forwarded the process to the defendant, is a matter of no importance.

The sole importance of the city's suit, as a fact in this case, lies in the expense thereof to the plaintiff. This bears upon the amount of recovery, a matter we deem it unnecessary to consider at this time.

■■ We have reserved one question which we, in conclusion, must determine. This point is in conjunction with the suggestion made by defendant that the plaintiff failed to plead facts negativing the exceptions contained in condition "a" of the policy.

The policy in its granting or general clause agrees to indemnify the assured against loss for damages on account of bodily injuries accidentally suffered " * * * by any person or persons not employed by the assured, except such as are excluded by condition 'a.' * * * " Condition "a" excludes the insurer from liability for any loss arising from injuries or death " * * * (1) caused by any minor employed by the assured contrary to law or any minor employed under fourteen (14) years of age where no statute restricts the age of employment (2) caused by any contract-convict. * * * "

The plaintiff failed to plead affirmatively that the injury to Johnson was not caused by an illegally employed minor or by a contract convict. Defendant argues that condition "a" is an exception.

The insurer cannot by a recital, as contained in the general clause of the contract, to wit, "except such as are excluded by condition 'a' hereof, * * * " convert a proviso into an exception, and thus place the burden upon the insured to plead and prove that the negligence causing the injuries to Johnson was not the result of the employment of any minor contrary to law or any minor employed under 14, or by any contract convict. If the

contention of defendant that condition "a" is an exception be sound, then the insurer could incorporate every proviso into the general clause as an exception in such manner. We hold, as urged by plaintiff, that condition "a" is a proviso and not an exception.

The judgment will be reversed, and the cause remanded with a direction to overrule the demurrer. It is so ordered.

WATSON, C. J., and HUDSPETH, J., concur.

BICKLEY, J., did not participate.

SADLER, Justice (specially concurring).

I concur in the result; also in the reasoning which supports conclusions reached in the disposition of all points save the last one. It involves the question whether the complaint sufficiently negatives exceptions from liability. The contract is so similar to that involved in Lunt v. Ætna Life Ins. Co., 253 Mass. 610, 149 N. E. 660, that I am unable to escape the force of that opinion in its conclusion that the limitation on liability, occurring as it does by way of exclusion in the granting clause of the policy, is an exception and that the complaint must by appropriate allegations negative the loss as coming within the exceptions.

But I think the complaint sufficiently fulfills this requirement as against the rather general language employed by the demurrer to point out the defect. The complaint alleges that Margaret Johnson "was such a person as is described thereby (in the policy) for acci-dental injuries to whom the defendant bound and obligated itself to indemnify the plaintiff in the sum of $5,000.00."

If, in fact, the injury to Margaret Johnson were caused by an illegally employed minor or by a contract convict, then she is not within the class of persons described in the policy "for accidental injuries to whom the defendant bound and obligated itself to indemnify the plaintiff in the sum of $5,000.00." So, while recognizing Lunt v. Ætna Life Ins. Co., supra, as calling for a present application of the rule of pleading there made decisive, I consider the complaint before us, for the reasons stated, as fairly meeting the requirements of the rule.