## SNOHOMISH COUNTY v. GREAT NORTHERN RY. CO.
### Nos. 9929, 9930.

Circuit Court of Appeals, Ninth Circuit.

Oct. 5, 1942.

Leslie R. Cooper, O. D. Anderson, and Clarence J. Coleman, all of Everett, Wash., for appellant.

Thomas Balmer, Edwin C. Matthias, and Anthony Kane, all of Seattle, Wash., for appellee.

Before MATHEWS, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This opinion covers two cases consolidated upon appeal.

Appellee, Great Northern Railway Company, a Minnesota corporation, brought two actions against Snohomish County, Washington, to recover damages alleged to have been sustained when one of the appellee's passenger trains was wrecked in said county and state by debris which was washed upon its tracks and its train after the collapse of a highway fill on December 28, 1937.

In one action, more than $3,000.00 was sought for damages to the train, roadbed and track. The other action, for more than $3,000.00, was brought to recover money paid out by the Railway Company upon claims for personal injury and wrongful death resulting from the wreck. We shall herein refer to the former action as the damage case and the latter action as the reimbursement case.

Both cases are based on the alleged negligence of the County in the construction and maintenance of a fill and of a culvert under and through the fill to carry the waters of a natural stream. The county highway was located upon this fill.

In addition to a general denial, the County plead affirmatively: (1) The contributory negligence of the Railway Company for failure to inspect its line and adjacent right of way, for failure to maintain a proper lookout in the operation of the train, and for using excessive speed and not maintaining reasonable control in the operation of the train in view of the wet weather prevailing; (2) that the Railway Company removed the lateral support from the highway which it was obligated to maintain under the terms of an alleged franchise, and (3) that the collapse of the fill was caused by an Act of God, to-wit: unprecedented rainfall.

The jury found for the Railway Company in the damage case.

By stipulation, the complaint, answer, court's instructions, verdict of the jury, and all of the oral testimony and exhibits received in evidence in the damage case were made parts of the reimbursement case record and made applicable to that case, thus leaving for determination therein, only the right of reimbursement. It is claimed by the County that since the jury found the Railway Company not guilty of negligence, the Railway Company acted wholly as a volunteer in making payments of damages to persons injured. By stipulation, the court, without a jury, tried this issue and thereafter the court found in favor of the Railway Company.

Fern Bluff, where the accident occurred, is a bluff located on the Skykomish River in Snohomish County, Washington. The Railway Company's line runs along the edge of the river, about forty feet below the bluff, and the County's road skirts the bluff top approximately paralleling the railroad track. Fern Bluff Creek runs through a culvert under the road, drops down under the railroad track and debouches into the river. At the point of the washout, the County road was built on a shallow fill, and under and through the fill the creek runoff was conducted through a 2 x 4 x 34 ft. board culvert.

Originally, the County road had occupied the site of the railroad, but under permission of the Board of County Commissioners, the Railway Company removed it to the bluff top and constructed its railroad approximately upon the site of the old County road. This new road was accepted by the County Commissioners on June 1, 1896.

In 1910, without consultation or notice to the Railway Company, the County put a 14-foot fill over the timber culvert. In 1915 or 1916 this culvert caved in, and the County, of its own accord and without consultation with the Railway Company, replaced it by a 12-inch concrete pipe, of the bell and spigot type, laid in two foot sections, without cementing or fastening the sections together. To the river end of the concrete pipe, the County in 1931 attached an 8-foot length of 12-inch corrugated iron pipe, five feet of which was inside the highway fill. After this replacement of the culvert by a concrete pipe, the water run-off was retarded and water began to back up so that at times it was six feet deep on adjoining property.

The train wreck with which we are here concerned occurred December 28, 1937 at four-forty a. m. Rain had been falling for eight or ten days previously and much water had accumulated behind the culvert. Before daylight on the eventful morning, the fill gave way, and gravel, rocks, logs, brush and cable which made up the fill and had held it in place, together with the impounded waters, were precipitated upon the railroad track. It is not known whether the break was coincident with the train's arrival at the point of the washout or before. It is known that rocks and debris were still moving when the train came to a stop. The last previous passage of a train was about 1:22 a. m., at which time the track was clear. The engine and several cars were thrown into the river, one car was completely demolished and others were badly damaged. The fireman was killed, and the engineer and eight employees of the mail service were injured.

■ Appellant claims under its first three specifications of error that: "The primary duty to restore and maintain adequate lateral support to the substituted County road remained continuously on the railroad". This assumes, of course, that the wreck was caused by the failure to furnish lateral support. This question of fact was submitted to the jury, on conflicting evidence, and the jury found that the wreck was caused not by the failure of lateral support to the bluff, but by the County's own negligence of its road construction. We shall not disturb this finding, which is amply supported by the evidence.

■ Appellant specifies as error the admission of that part of a statement of the witness Adams that

"Undoubtedly this [the slide or cave in related herein] was caused by the water backing up on account of the small pipe and the water seeping into the hill".

According to appellant, "A lay witness cannot be impeached by an opinion expressed on a scientific subject". Mr. Adams was a witness for the County and testified that the 12-inch pipe culvert always took care of the water of the creek and handled it satisfactorily; that he knew there never was at any time any backing up, seepage or any washing or leakage through the fill around the culvert; and that nothing had taken place before the slide that would make any change in this culvert in any way. Upon cross examination Adams was confronted with a written statement which contained the language, the subject of the claimed error. The written statement squarely contradicted the witness' direct testimony at the trial, and was, of course, properly admitted as impeachment of the witness' testimony and was perfectly proper as a part of the cross examination.

■ Appellant urges that the trial court erred in rejecting testimony offered by the County to prove the existence of certain prior slides along Fern Bluff. It is stated in appellant's opening brief that "The trial court permitted the proof of prior slides which had occurred at the point of the accident only, but rejected all testimony concerning prior slides which had taken place within a distance of three hundred to

four hundred feet on either side of the point of the accident".

The appellant contends that evidence of such prior slides was admissible to show the quantum of inspection, lookout and control or reduction of the speed of the train which the Railway Company was required to exercise at the time of the accident.

However, the trial court did not unconditionally reject such testimony, but instead ruled that in order for such evidence to be admissible a showing of similar conditions must first be made.

But in spite of the court's ruling the County succeeded in getting before the jury much testimony of other slides in the vicinity of the derailment. The jury had an abundance of testimony before it as to recent rains and, therefore, could not have been in ignorance of the slide conditions and of necessity must have taken such conditions into consideration and related them to the whole factual situation. The jury was instructed that if an ordinarily prudent person under the weather conditions then prevailing should have expected a slide, it was the Railway Company's duty to operate its train under reasonable control and that if it failed in that respect and its failure was a proximate cause of the accident, its verdict should be for the defendant. If the court unnecessarily restricted the testimony upon the point of land slides, in the circumstances obtaining, it is not reasonably probable that the restriction could have affected the outcome of the case.

■ The County's witness, Muth, was asked to state what the weather conditions were just prior to the time of the derailment, and in response he testified, "Well, we had about 5 inches of snow and when it quit snowing it started raining, and it rained there several days." The Railway Company moved to strike this answer in so far as it related to snow, for the reason that it was not within the pleadings and was not in issue, and the motion was granted. The exclusion of the testimony as to snow is assigned as error.

The County contends that "under the general issue a defendant can always show the physical conditions surrounding the accident", and urges that the testimony concerning the snow was admissible on this theory.

It will be remembered that the snowfall was prior to several days of rainfall, and it is common knowledge that five inches of

new snowfall would have disappeared and joined with the rainfall infiltration and run-off. The assignment is highly technical and not substantial to any issue in the case.

■ In one of the appellant's specifications of error, it is claimed that before the County can be legally liable for failure to properly maintain and repair, it must either have actual knowledge or constructive notice of the defective condition, and that the court erroneousy instructed the jury upon this point.

But this contention is not good as against a stituation in which the condition complained of is due to the act or neglect of the municipality itself. We quote from the decision of the Washington court in the case of Murray v. Seattle, 96 Wash. 646, 165 P. 895, 899:

"It is only in cases where the negligence relied on is the failure of the city to remove an obstruction or to repair a defect in the street not caused by its own act or neglect that the question of notice of the obstruction or defect is an essential element."

See also Vittucci Importing Co. v. Seattle, 72 Wash. 192, 130 P. 109, involving a claim for damages caused by a back-up in a sewer.

■ The County proposed but the court refused to give the following proposed instruction and the County assigns such refusal as reversible error:

"The jury is instructed that the County Commissioners as a matter of law cannot relieve plaintiff railroad from any obligation, if any, which said plaintiff may be required to render toward the restoration and maintenance of any County road which the railroad appropriated in the building of its right-of-way.

"The jury is further instructed that the fact that the defendant performed work on the road would not relieve plaintiff of any such obligation toward the restoration or maintenance of the County highway appropriated by it."

This proposed instruction is related to the County's contention that the Railway Company removed the lateral support of the bluff which slid off and the Railway Company's duty in that circumstance. But, the jury's verdict was that the accident was caused by the negligence of the construction by the County, which negatives the only support of the proposed instruction.

1000

The County also proposed an instruction concerning the rights of a County in establishing and making an original grade for the road. This the court refused and, in support of the County's claimed error on this point, it has advanced the argument that since a County has the right to establish an original grade for a road, street or highway, there could be no liability on the County for the collapse of the highway in the absence of negligence. But this loses whatever strength it might otherwise have by the simple fact that the instant action was based upon the negligence of the County in the construction and maintenance of the fill.

### The Reimbursement Case.

There remains for consideration the question as to the liability of the County to reimburse the Railway Company for the personal injury and wrongful death claims paid by it. The thesis is advanced that if the Railway Company was not negligent, then in making the payments referred to it was a mere volunteer and not entitled to recover.

The Railway Company alleged that by reason of the relationship between it and its passengers and employees and the high degree of care imposed by law upon the Railway Company toward its passengers and employees, the Railway Company was legally liable for the damage sustained by them.

Upon conflicting testimony the Judge trying this issue determined that the Railway Company was guilty of passive or constructive negligence in failing to discover the dangerous condition created by the County and that the Railway Company in settling the claims of its employees and passengers was not acting as a volunteer and was entitled to recover.

We quote the finding of the court in this respect:

" * * * The court finds that the dangerous condition with respect to said county road, dirt fill, timber cribbing and brush, and concrete and corrugated iron culvert existing in close proximity to plaintiff's operated main line of railroad * * to have existed for several years prior to the 28th day of December, 1937, *unknown to the plaintiff railroad*

*company,* although said dangerous condition could have been discovered by the railway company by reasonably careful inspection of its right of way and adjacent property, which duty plaintiff owed to its employees and mail clerks but not to defendant * * and that the failure to perform such duty constituted passive but not active negligence on plaintiff's part; and that plaintiff and defendant were not in *pari delicto.*" [Emphasis supplied.]

This point was considered in Alaska S. S. Co. v. Pacific Coast Gypsum Company, 71 Wash. 359, 128 P. 654, 656. We quote from the opinion of the court in which it stated the general rules of Washington relative to the right of contribution:

"The general rule of nonliability for contribution and indemnity as between joint wrongdoers is easy of statement, and rests upon the soundest principles of public policy. But the exception to this general rule, or rather the question of when the joint wrongdoers are not jointly in the wrong as between themselves, yet are such in the eyes of the law as to third parties, is often a problem of difficult solution. * * *

"In Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 327, 16 S.Ct. 564, 568, 40 L.Ed. 712, Justice White, speaking for the court, quoted approvingly from [Inhabitants of] Lowell v. Boston & Lowell R. Corp., 23 Pick., Mass., 24, 32, 34 Am.Dec. 33, as follows: 'Our law, however, does not in every case disallow an action by one wrongdoer against another to recover damages incurred in consequence of their joint offense. The rule is: "In pari delicto potior est conditio defendentis." If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely malum prohibitum, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.' "

The decision in each case is affirmed.