### THE FRANK. THE P. R. R. No. 251. O'BOYLE v. CORNELL STEAMBOAT CO. et al.

### No. 305.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for claimant-appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for claimant-appellee Cornell Steamboat Company.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The steam tug Frank, belonging to the Cornell Steamboat Company, had libelant's barge James McCue on two short hawsers, and was towing her down the Harlem river from 201st street to 96th street. The tug was from 70 to 75 feet long, the barge about 100 feet long, and the distance between the bow of the barge and the stern of the tug was about 28 or 30 feet—making the aggregate length of the tow about 200 feet. The tide was ebb, wind easterly. The master of the Frank had had from two and half to three years' experience in towing in the Harlem river.

The tug came through the easterly draw of the Willis avenue bridge because her master saw a car float (which turned out to be the P. R. R. No. 521) extending about 100 feet out into the river from a pier below the drawbridge on the Manhattan side, and thought it impossible for him to proceed through the bridge on the Manhattan side without likelihood of collision. As the tug came through the easterly draw, she exchanged one blast signals with a New Haven tug coming north with a car float, up the river, in the center of the stream.

The Frank knew that the New Haven tug and float were going into one of the New Haven slips which lay on the east side of the river about across from the pier where car float P. R. R. No. 521 was moored. The Frank slowed down to half speed and pulled over as close as she could to the New York shore in order not to collide with the New Haven float as the latter was proceeding to enter her slip. The Frank herself passed about 35 or 40 feet to the east of P. R. R. No. 521, but the passage between the New Haven float and the No. 521 was so narrow that the barge towed by the Frank, running light, tailing behind her, and somewhat affected by the east wind, came into collision with the No. 521.

The distance between the center pin of the drawbridge and the end of No. 521 was only about 300 feet. The barge James McCue was 30 feet wide, and the river at the point of collision was about 500 feet wide, so that, if we regard No. 521 as extending 100 feet into the stream, the space between the New Haven float, which was in the middle of the river, and the end of No. 521, was only about 150 feet in width. Through that strait the tow and barge, extending a length of 200 feet, had to navigate. There was only a width of about 120 feet of water after allowing for the barge itself (which was 30 feet) through which to take the barge. Moreover, the Frank and her tow had to go over to the New York side in order to avoid the New Haven float. This added greatly to the risk, for, in taking such a course, the barge would be carried toward the Manhattan shore before she got straightened out and would be affected by the wind and the ebb tide setting over from the Bronx Kills toward the New York piers in addition.

The car float No. 521, by lying 100 feet out in the stream, unduly restricted a channel already narrow. We think it was negligent and unlawful for No. 521 to block the stream, particularly at a point where proximity to a drawbridge somewhat restricted freedom of navigation and the floats of the New Haven Railroad were frequently entering its terminal just across the river, which was only 500 feet wide at that point. There it was more important than usual for vessels going up and down the river to have the full width of the channel available.

The District Court held No. 521 at fault, but, for reasons which we do not understand, found the Frank secondarily liable. The Frank was either solely liable because solely at fault, or was jointly liable with No. 521 because both were at fault. She could by no possibility be secondarily liable.

The statute provides that "it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft." U. S. Code, tit. 33, § 409 (33 USCA § 409).

While it is always a question of fact whether a vessel sought to be charged with liability has been so tied up as to "obstruct the passage of other vessels," and while even negligent obstruction of a channel may afford no basis for liability where, by proper navigation, a collision could readily have been avoided, we think that the position of No. 521 was such as to violate the law and to be the cause of the collision. It was admittedly unusual for floats to extend into the river at the point in question. The approach of the New Haven float to the place where the No. 521 lay in the channel left but a narrow strait through which to take the tow. The master of the Frank was confronted with a sudden emergency. He used his best judgment. He was an experienced navigator, and we cannot say that he did not act with reasonable care under all the circumstances. There is nothing in the record to show that he committed any fault.

It is settled law that a collision with an anchored vessel carries with it a presumption of fault. But here the presumption of fault was overcome by evidence that the collision was unavoidable because the Frank had been drawn into a pocket by the negligent mooring of No. 521 in the channel. It is also familiar law that a tug must keep her tow in line. The negligent mooring of No. 521 made it impossible for the Frank to keep her tow behind her in the situation which developed. Ordinarily the master might have been responsible because he did not sufficiently allow for the force of the wind and tide which set the barge over against No. 521, but not where, as here, the improper mooring of the Pennsylvania car float left him in a position where precise calculation was impossible or unduly difficult.

The interlocutory decree is so modified as to hold the car float P. R. R. No. 521 solely at fault, and, as so modified, is affirmed.