### THE DALY BOYS.

### THE BRONX NO 2.
#### No. 359.

Circuit Court of Appeals, Second Circuit.

July 25, 1938.

Edmund F. Lamb, of New York City, for appellant Capitol Coal Corporation.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for appellant Russell Bros. Towing Co., Inc.

Purdy, Mason & Lamb, of New York City, for appellee Bartle Daly.

Otto & Easterday, of New York City (Henry E. Otto and Samuel C. Otto, both of New York City, of counsel), for appellee D. J. Conroy, Inc.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This cause involves a claim for damages sustained by libellant's barge "Daly Boys" while moored outside of two other barges at the dock of the Capitol Coal Corporation at the foot of 145th Street on the Manhattan side of the Harlem River. "Daly Boys" extended 32 feet into the channel between the Manhattan pier line and the west side of the center pan of the Lenox Avenue Drawbridge. She thus narrowed the channel, which had a width of but 104.42 feet, so that vessels passing through it had only about 72 feet of water within which to navigate. The tug "Bronx No. 2", with a carfloat on her port side, attempted to pass through the above channel. As the two vessels had a width of 58 feet, there was a clearance for passage of but 14 feet. In carrying out the manoeuvre the carfloat hit the fender of the center pan of the bridge, rebounding from the contact, so that she struck the "Daly Boys" and caused the damage complained of.

The "Daly Boys" was chartered to the Capitol Coal Corporation and was placed in the exposed position that she occupied at the time of the accident by a tug of Russell Bros. Towing Co., Inc., a concern which did the towing and shifting for the Capitol Coal Corporation. It was part of the duty of the Towing Company to remove coal barges after they had been unloaded, as "Daly Boys" had been in the present case. Instead of doing this, it placed the "Daly Boys" in the exposed position we have referred to and then neglected for some time to move her to a place of safety.

The trial court found the navigation of the "Bronx No. 2" without fault and dismissed the libel as against her, but held that Capitol Coal Corporation in leaving "Daly Boys" in the channel in an exposed position neglected the duty of a bailee or charterer and was responsible to the libellant for the resulting damage. Capitol Coal Corporation was, however, allowed to recover from Russell Bros. Towing Co., Inc., any amount for which Capitol Coal Corporation was found liable to libellant for the reason that the latter should have reasonably removed the barge to a place of safety.

The important question is whether the tug "Bronx No. 2" was properly held free from fault. According to the latter's testimony she picked up her carfloat at 154th Street on the easterly side of the Harlem River about 2100 feet from the upstream end of the Drawbridge. There was a head tide running at about 3 miles an hour. She came down the river at the rate of three or four miles and angling toward the west side of the stream, so as to pass through the Manhattan side of the draw. When she was about half way to the bridge she observed the tug "Progressive", belonging to the Russell Bros. Towing Co., Inc., coming up with a hawser tow, a little on the easterly side of the river. The latter sounded a one-blast signal which the "Bronx No. 2" answered by one blast, in-

dicating a port to port passage. The navigation of the "Progressive" in no way interfered with that of the "Bronx No. 2". While the "Bronx No. 2" was about 300 feet to the north of the position of the "Daly Boys" and about 75 feet from the northerly end of the center pan of the Drawbridge the lookout on the downstream end of the carfloat called out to the master of the "Bronx No. 2" that there were three coal boats at the bulkhead of the Capitol Coal dock. The master said: "How does it look?" to which the lookout replied: "All right we can go through." The master added: "So I got up and straightened around and I saw where there was approximately enough room to get through." He testified that he then slowed down and, when he had advanced a third of the distance below the draw of the bridge, his carfloat hit the fender of the center pan of the bridge, sheered westward and collided with the "Daly Boys". He said that it was his intention to land her against the center pan but not "hard enough to rebound", and added: "I thought she would hit the center pan and stay there." He also remarked that there was width enough to go through. When asked why he didn't go through without hitting "Daly Boys", he answered: "As I say it was one of them unforeseen things, that rebounding of the float." When also asked: "Could you have reversed your engines? * * * And not entered the draw?" he replied to both questions. "Yes."

The District Court found that the "Bronx No. 2" did the best she could in a crisis when confronted with an emergency created by the unlawful presence of the "Daly Boys" in the navigable channel and that consequently she ought not to be held at fault. We cannot so interpret the facts developed at the trial. Exhibits R and R–1 indicate that there was a clear view of the "Daly Boys" from both the "Bronx No. 2" and her carfloat during most of the course from 154th Street to the place where they entered the draw and that the view of the lookout was not impeded by the height of the pan of the bridge. Accordingly we think the lookout was careless in not seeing the barges extending out into the channel and in giving warning long before he did. But even if we take the lookout at his word and assume that he gave a warning as soon as he could see the barges, the master admitted that though he was then only 300 feet away from the "Daly Boys" he could have reversed and held his carfloat in the head tide. According to his own testimony he was placed in a dilemma in which he either ought to have done the prudent thing and to have held back or, if, as he thought, the 14 feet of clearance gave him room enough to pass, he ought to have carried out the manoeuvre with sufficient care not to shove his float into the fender of the bridge at such an angle that it sheered over against the "Daly Boys". We find no ground for supposing that there was danger in colliding with the "Progressive" if the "Bronx No. 2" had backed. Indeed, the suggestion seems to have been largely that of Crosson, the expert on navigation called on behalf of the "Bronx No. 2" at the trial. The "Bronx No. 2" was proceeding at only three or four miles an hour against a head tide. It seems manifest that she could have held back under such circumstances, or, if she chose to go forward, could have pulled her float along the face of the fender instead of making a contact with it at such an angle or in such a way as to cause the sheer and the resulting collision. Not to hold back, showed a lack of care and to go forward as the "Bronx No. 2" did without keeping the float in line with the face of the bridge fender, showed even greater negligence. The court below relied on our decision in The Frank, 40 F. 2d 430, but the "Bronx No. 2" was confronted with no such inevitable emergency as was The Frank. Her lookout ought to have seen "Daly Boys" long before he did and the "Bronx No. 2" should have held back until the barge could have been removed or until, by the passage of the "Progressive" up through the easterly side of the draw, the way would have been clear for the "Bronx No. 2" to go down on that side.

The "Bronx No. 2" was primarily liable for the collision since as between herself and the other respondents she was the final wrongdoer under circumstances where prudent navigation would have avoided the accident. But Russell Bros. Towing Co., Inc., and Capitol Coal Corporation were also responsible to the libellant—the former for placing "Daly Boys" in the channel subject to a risk of damage from oncoming vessels and for not removing her to a place of safety, and the latter, as charterer, for permitting her to remain in such a dangerous place. The

channel was unlawfully restricted through the fault of both so that a collision might arise either through the obstruction to navigation which rendered a collision probable or through the negligence of navigators which was foreseeable and not unlikely in such a narrow channel. In either event such damages as "Daly Boys" suffered were foreseeable and may be recovered by the libellant, an innocent third party. The Towing Company is, however, primarily liable as between it and the Coal Corporation because it was under a contractual duty to the latter to shift the barge to a place of safety, a duty which it neglected seasonably to perform. Accordingly we hold the "Bronx No. 2" primarily, and Russell Bros. Towing Co., Inc., secondarily liable to the libellant who may also recover from Capitol Coal Corporation any damages which he may not be able to obtain from the other two respondents. Washington Gaslight Co. v. Dist. of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712; Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U.S. 217, 224, 225, 25 S.Ct. 226, 49 L.Ed. 453, 2 Ann.Cas. 525.

Interlocutory decree modified in accordance with the foregoing opinion.