ALEXANDER WASCIN et al. Individually and as Copartners Doing Business as BRIDGEVIEW BOAT HAULAGE Co., Plaintiffs, v. BRONX TOWING LINE, INC., Defendant.

City Court of the City of New York, Trial Term, New York County, December 18, 1946.

*David Simon* for plaintiffs.

*Roman Beck* for defendant.

COLEMAN, J. Plaintiffs, the owners of a boatyard on Westchester Creek, sue to recover for damage to a landing stage and a pontoon float moored in the creek off their yard. The landing stage and float were damaged, they say, when a barge being towed by the defendant's tug struck a yacht which was tied to the offshore side of the stage; the impact not only damaged the yacht, but caused the latter to crash into the stage. The defendant denies that there was any collision, but I find that there was, and that there was some damage to plaintiff's property. Yet, because of the negligence of the plaintiffs in tying up the yacht in the position they did, and for five days, they cannot recover. (U. S. Code, tit. 33, § 409.)

Westchester Creek, at the point of collision, is about 1,000 feet wide; the navigable portion dredged by the War Department and marked out by Government buoys was, by the plaintiffs' figures, about 70 feet wide; by the defendant's, about 94 feet. The yacht *Chipper* is 65 feet in length with a 12-foot beam, and was moored on the outer side of the stage and parallel with it. Her beam, again according to the defendant, projected about 8 feet into the navigable portion of the stream; the plaintiffs, in their brief, argue that there was a negligible projection of only 4 or 5 feet, and I would find that all of the *Chipper's* beam was within the channel, as one of the plaintiffs testified that the outer side of the float was on the line marked out by the buoys. Traffic on the creek is heavy, as the plaintiffs knew; tankers and tugs with tows of loaded and light scows or barges two abreast ply the stream; the scows or barges vary in width from 30 to 40 feet each. If barges two abreast measured 70 feet in width, they would occupy the entire width of the channel, according to the plaintiffs' figures, and there would be no room for play, and really, no room for passage at all. If the figure suggested by the defendant and indicated by the Government chart is taken — 94 feet — there would still be only 12 feet on each side of the

tow, assuming it navigated in the middle of the channel, and that there was no other traffic in either direction. In such circumstances, the defendant argues, relying upon the statute dealing with the obstructing of navigable waters by vessels (U. S. Code, tit. 33, § 409), it was negligent of the plaintiffs to tie the yacht where they did in a stream so narrow that with the greatest of care on the part of navigators, a collision between the yacht and a barge towed abreast of another was almost inevitable. There may have been a mathematical clearance of a few feet, the defendant adds, but this is practically no clearance at all.

The statute reads: " It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft * * *." (U. S. Code, tit. 33, § 409.) Of course, as the plaintiffs state, the command of the statute is not " absolute " (*Atlantic Refining Co.* v. *Moller,* 320 U. S. 462, 466) any more than our State statute prescribing the side of the roadway along which a pedestrian is to walk is absolute (*Tedla* v. *Ellman,* 280 N. Y. 124). But the statute does establish a standard of care applicable to ordinary negligence actions for damages, and, if a plaintiff departs from that standard and his departure creates a field of danger which it was the object of the statute to eliminate, he cannot complain if he has been injured through the concurring negligence of a defendant. (Cf. *Martin* v. *Herzog,* 228 N. Y. 164; 2 Restatement, Torts, §§ 286, 469.) That, it seems to me, is the case here. " While it is always a question of fact whether a vessel sought to be charged with liability has been so tied up as to ' obstruct the passage of other vessels,' and while even negligent obstruction of a channel may afford no basis for liability where, by proper navigation, a collision could readily have been avoided ", (*The Frank,* 40 F. 2d 430, 432), I think the position of the yacht obstructed, if it did not prevent the passage of other craft, and that because of plaintiffs' act in placing it where they did, and irrespective of the defendant's negligence, they cannot recover.

The plaintiffs emphasize the presumption that the defendant in striking a moored vessel was at fault. They are indeed correct in doing so, but we start with that presumption; we do not end there. The plaintiffs' own conduct is open to examination; and they knew that tugs with barges two abreast continuously pass up and down and that the clear passage admittedly was narrow. They do not charge the defendant with negligence

in towing barges in twos and they could not deliberately impose upon navigators the obligation of measuring clearance by a few feet if not by inches; they knowingly took the chance of just such an occurrence as happened. There is no reason to suppose that a collision could " readily have been avoided " except by the tug's stopping, and the tug could assume that having navigated upstream a day or two earlier with a tow of similar breadth, it could probably return without danger. I am far from saying that the tug could not have seen the yacht, although the collision occurred after sunset and the day was somewhat foggy; but in view of the extreme narrowness of the channel it is only conjectural as to what the tug could or should have done to avoid the impact.

There will be judgment for the defendant dismissing the complaint.