**UNITED STATES FIDELITY & GUARANTY CO. v. DOHENY (two cases).**

**No. 9668.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 17, 1941.

Rehearing Denied Dec. 31, 1941.

Howard Toole and W. T. Boone, both of Missoula, Mont., for appellant.

E. J. McCabe, of Great Falls, Mont., for appellee.

Before HANEY and HEALY, Circuit Judges and BOWEN, District Judge.

HEALY, Circuit Judge.

In December, 1934, Roberta and Marguerite Doheny were killed in a highway accident in Montana while riding as guests in an automobile operated for the partnership of Coverdale & Johnson. In suits in the state court for their wrongful death, appellee, as administratrix, recovered two judgments of $5,116 each against the partnership. Doheny v. Coverdale & Johnson, 104 Mont. 534, 68 P.2d 142. Appellant, which had issued a public liability policy to the partnership, participated in the defense of these actions. Writs of execution against the judgment debtor having been returned unsatisfied the present suits were brought against appellant as insurance carrier. From judgments in favor of appellee the insurer appeals.

The partnership on September 21, 1934, entered into a contract with the state of Montana for the construction of several bridges on the Augusta-Sun River road in Lewis and Clark county. "As a condition precedent to the complete execution" of that contract the partnership was required to furnish a surety bond for its faithful performance. Such bond was written at that time by appellant, the condition of its bond being that the contractor "shall in all respects faithfully perform all of the provisions of said contract, including the specifications." One provision of the specifications was that the contractor "shall carry public liability insurance to indemnify the public for injuries or damages sustained by reason of the carrying on the work. This insurance shall be in the amount of at least $10,000 for one person and a total of $20,000 for one accident. The contractor shall submit adequate evidence to the [State Highway] Commission that he has taken out such insurance." In forwarding the contract for execution, the commission by letter called the contractor's attention to the provision requiring the submission of evidence of the issuance of the public liability policy and stated that "preferably, this information should be conveyed in the 'form of a letter to this department from the insurance agent who furnishes you the policy."

A further provision of the specifications was that all things contained therein, together with notice to contractors and the contract bond, "also any and all supplemental agreements made or to be made, are hereby made a part of these specifications and contract, and are to be considered as one instrument."

On. October 1, 1934, appellant issued a policy to the partnership and on the same date advised the commission by letter "we have issued contractor's public liability policy PC—19715 for this assured, with public liability limits of ten thousand and twenty thousand and property damage one thousand." The performance bond was enclosed with and referred to in the same letter. The commission was not furnished with the original policy or a copy and was not otherwise advised as to the extent or nature of the coverage provided. While by this policy appellant undertook in general terms to settle all claims for damages on account of bodily injuries or death suffered by any person (other than an employee of the insured) by reason of and during the progress of the work, it contained an excluding rider to the effect that "this policy shall not cover loss from liability for, or any suit based on, injuries or death caused directly or indirectly by any * * * automobile * * * elsewhere than at the immediate places covered by the policy where the insured is carrying on his operations." The operations referred to were the bridges under construction, these being scattered at intervals along the highway. The nearest of

the bridges was located some 12 miles distant from the place of the accident in question, which, however, was on the Augusta-Sun River road.

The death of the two young women was a consequence of the actionable negligence of an employee of the contractor who was driving the car under direction of one of the partners. The court found that on the occasion of the accident the car was being used in carrying on the work under the construction contract, which was still incomplete at the time. It declined to give effect to the exclusion provision of the policy relating to the immediate place of injury, in effect holding appellant responsible as insurer notwithstanding the exclusion.

Appellant does not seriously challenge the finding that the damages were sustained by reason of and in the course of the carrying on of the work on the project; and indeed in the light of the evidence as well as the pleadings and judgments in the state court suits it could not well do so. Its contention in respect of the evidence is that the accident was shown to have happened elsewhere than at an immediate place of the operations, hence was outside the policy coverage. The latter contention brings us to the main point in the case, the effect of the exclusion provision.

■ In a preliminary way it is to be observed that appellant does not question the authority of the highway commission to require the obtaining by the contractor of public liability insurance. There is evidence that this had been the practice of the commission for some years in the letting of public works contracts. Plainly, the requirement was intended for the protection of the general public, not for the safeguarding of the state in its capacity as a party to the contract. Aside from its immunity from suit, the state as a party had no legal responsibility for damages suffered as a result of the negligence of an independent contractor.

■■ It is common knowledge that added risks to the traveling public attend upon highway construction, not merely from the immediate operations themselves but in the movement of men, materials and equipment from place to place. In these movements the automobile plays a not inconsiderable part. While contractors are liable under general law for damages caused by their negligence and are obliged to respond independently of any agreement with the state, it is to be assumed that it was a matter of state policy to require the carrying of public liability insurance as a measure of precaution against possible financial irresponsibility on the part of contractors. In the bond furnished by it appellant undertook that the contractor would faithfully perform all obligations resting upon him under his contract. One of these was that he was to carry liability insurance "to indemnify the public for injuries or damages sustained by reason of the carrying on the work."

■ Appellant is in the business of writing surety bonds and public liability policies, for which it charges a compensation. It has sought and obtained from the state the right to carry on that business in Montana. It was fully advised of the broad requirement contained in the agreement, the performance of which it had guaranteed. We assume that, notwithstanding its performance bond, it was not itself obligated to write the required public liability policy, and we may assume further that if it did it so it might incorporate therein such exclusions as it saw fit; but in the latter event a lively appreciation of its dual position, as well as a rudimentary sense of good faith, would have suggested that it seek a corresponding modification of the requirement or at least that it point out to the state the particulars in which its insurance contract fell short of the required coverage. See § 7528, R.C.Montana. Appellant did none of these things. On the contrary, its letter to the commission was calculated to induce that body to believe that a policy had been issued to the contractor as broad as that described in the specifications. There is not even a showing that the policy appellant wrote in this instance was a standard form in general use, or, more specifically, that policies written by concerns engaged in writing public liability insurance on behalf of contractors commonly contain exclusion clauses comparable with the one here. Under the circumstances appellant will not be heard to say that the policy it actually wrote was less comprehensive than the requirement, giving to the latter a fair and reasonable interpretation. To hold otherwise would virtually amount to the sanctioning or encouragement of frauds upon the state, and through the state upon its people and others within its borders. We are persuaded that the courts ought not lend their aid to such practices.

■ We find nothing in the Montana statutes or decisions requiring a reversal of these judgments. Whether the various in-

struments are to be read together and construed as one instrument, as the trial court appears to have thought, it is unnecessary to inquire; in any event the whole series of transactions is to be taken into account, § 10521, Rev.'Code Mont.

Affirmed.

HANEY, Circuit Judge (concurring).

The contract with the state required the firm to "carry public liability insurance to indemnify the public for injuries or damages sustained by reason of the carrying on the work" and to furnish a surety bond. On the same day the contract was signed, a bond, with appellant as surety, was furnished containing the following condition that if the firm " \* \* \* shall in all respects faithfully perform all of the provisions of said contract, and his, their or its obligations thereunder \* \* \* and shall save harmless the State of Montana \* \* \* from any damages growing out of the carelessness of said Contractor or his, their, or its servants \* \* \* then this obligation to be void or otherwise to be and remain in full force and virtue."

A policy, with appellant as insurer, was thereafter furnished, but its provisions excluded liability for the accident in question.

*First.* In determining the liability of the surety, the contract and bond are to be construed together. Federal Surety Co. v. Basin Const. Co., 91 Mont. 114, 126, 5 P.2d 775. By becoming surety, appellant assumed obligations which were "coextensive with and measured by the promises of the principal to the obligee contained in the contract". Id. Therefore appellant as surety promised to supply the insurance mentioned in the contract.

*Second.* The purpose of the contract provision was to protect the state. It was actuated, not because of the benevolence of the state toward persons who were injured, but because of the state's anxiety that performance of the contract might be delayed or prevented by vexatious actions or other proceedings against the contractor. Even so, it incidentally benefited people who might be injured, and was therefore a contract for the benefit of third persons. Such persons, in Montana, may sue and recover from the surety directly on the bond. Gary Hay & Grain Co., Inc., v. Carlson, 79 Mont. 111, 255 P. 722. Recovery here, therefore, was properly allowed under the bond, regardless of the terms of the policy.

*Third.* I do not believe this case is a proper one for the invocation of an equitable estoppel. My understanding of such an estoppel is the case where one, by his conduct has mislead another who relies on the fact indicated by such conduct, to his disadvantage. See 21 C.J. 1113, § 116. While an estoppel might arise here as against the state, appellee has relied on no conduct of appellant, and consequently has neither taken nor changed her position as a result of any action or conduct of appellant.

I think the judgment should be affirmed, but on the ground that recovery is had under the bond.