**UNITED PACIFIC INSURANCE COMPANY, a corporation, Appellant,**

v.

**Harold MEYER, Appellee.**

**UNITED PACIFIC INSURANCE COMPANY, a Washington Corporation, Appellant,**

v.

**C. G. POPE, Appellee.**

**Nos. 16921, 16922.**

United States Court of Appeals
Ninth Circuit.

June 19, 1962.

Louis F. Racine, Jr., Pocatello, Idaho, Donart & Donart, George Donart, and James B. Donart, Weiser, Idaho, for appellant.

A. C. Kiser and Willis C. Moffatt, Boise, Idaho, for appellee.

Before CHAMBERS, POPE and JERTBERG, Circuit Judges.

POPE, Circuit Judge.

Each of the appellees above named, as plaintiffs, brought suit in the State court of Idaho and recovered judgments against one William Trowbridge for personal injuries received by them by reason of the latter's alleged negligence. At the time of the injuries Trowbridge was working on the construction of a certain hospital building which was being erected by one Cahoon, a general contractor, under contract with the State of Idaho. The said appellees-plaintiffs, after recovery of their respective judgments, were unable to collect from Trowbridge and proceeded to bring these actions in the court below to recover the amount of such judgments from the appellant United Pacific Insurance Company, asserting that it had provided or was under obligation to provide liability insurance to protect Trowbridge against public liability in respect to his operations in connection with the building construction.

It was conceded that the Insurance Company had been tendered the defense of the original actions against Trowbridge and that it had declined responsibility. United Pacific had issued a policy of liability insurance to Cahoon, the general contractor. The trial court held that the contract between the State of Idaho and Cahoon required the latter to provide liability insurance to protect against public liability not only on the part of Cahoon but on the part of Cahoon's subcontractors as well; that Trowbridge was a subcontractor under Cahoon, and that by reason of a certain certificate of insurance furnished by the insurance company in connection with the execution of the contract, and by reason of other named circumstances, the Insurance Company, "bound and committed itself and warranted that it had provided bodily injury liability insurance" which would protect subcontractors and persons injured by them; and awarded each of the plaintiffs, who were employees of Cahoon, judgment as prayed for in their complaints. Jurisdiction was based upon diversity of citizenship of the parties.

Upon these appeals, the Insurance Company contends that the evidence is insufficient to sustain the court's findings; that the findings are clearly erroneous, and that in any event such findings do not support the court's conclusions or the judgment.

The contract above referred to between the State of Idaho and Cahoon, provided for the construction of a hospital building at Gooding, Idaho, with the financial aid and assistance of the United States administered by the Surgeon General through the United States Department of Public Health. The specifications for the construction of the building were prepared to meet the requirements of the regulations of the Department of Public Health. One of such specifications which were made a part of the contract for the construction of the building, provided as follows: "21.(c) Bodily Injury Liability and Property Damage Liability Insurance.—The contractor shall take out and maintain during the life of this contract such Bodily Injury Liability and Property Damage Liability Insurance and Automobile Bodily Injury Liability and Property Damage Liability Insurance as shall protect him and any subcontractor performing work covered by this contract from claims for damages for personal injury, including accidental death, as well as from claims for property damage, which may arise from operations under this contract, whether such operations be by himself or by any subcontractor or by anyone directly or indirectly employed by either of them, and the amounts of such insurance shall not be less than—

"(1) Bodily Injury Liability Insurance, in an amount not less than Fifty Thousand Dollars ($50,000.00) for injuries, including wrongful death to any one person, and subject to the same limit for each person in an amount not less than One Hundred Thousand Dollars ($100,000.00) on account of one accident.

"(2) Property Damage Insurance in an amount not less than Ten Thousand Dollars ($10,000.00) for damages on account of any one accident, and in an amount not less than Twenty-five Thousand Dollars ($25,000.00) for damages on account of all accidents."[1]

The contract in question was executed on the 17th day of March, 1955, at the office of the State's Commissioner of Public Works. Present at that time

---

[1]. Other portions of the same paragraph 21 required the contractor to take out and maintain workmen's compensation and employers' liability insurance for all his employees and required any subcontractor to provide such insurance for all of the latter's employees.

Paragraph 21 also provided: "The contractor shall not commence work under this contract until he has obtained all the the insurance required hereunder and such insurance has been approved by the Owner, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has been so obtained and approved."

were the Commissioner, Cahoon, and the representatives of the Insurance Company; the latter brought with them the performance bond and the payment bond called for by the contract executed by the Insurance Company and a certificate of insurance. The certificate of insurance read as follows:

"CERTIFICATE OF INSURANCE

"In effect on Date of This Certificate

"This is to certify that the following policies of insurance, covering as stated, have been issued by the UNITED PACIFIC INSURANCE COMPANY of Tacoma, Washington, and are in force at this date:

"Name of insured (1) W. R. CAHOON, (2) PORTNEUF LUMBER AND SUPPLY COMPANY, INC., AND (3) W. R. CAHOON D/B/A W. R. CAHOON CONSTRUCTION COMPANY

"Address of insured    POCATELLO, IDAHO

| "Bodily Injury Liability | Property Damage Liability | AUTOMOBILE |
|---|---|---|
| "Policy Number    CLP 74751 | | |
| "Limits $200,000/$500,000 | $25,000/$25,000 | $200M/500M-25M/25M |

"Effective        1–1–55
"Expires         1–1–56

"Description of operations, work, locations or

ALL OPERATIONS COVERED:

"Workmen's Compensation
   "Policy Number: WC-43276
   "Limits:        Statutory
   "Effective:     April 1, 1953
   "Expires:       Continuous

"Dated March 17, 1955
"To STATE OF IDAHO
"Address Boise, Idaho

        "UNITED PACIFIC INSURANCE COMPANY
        "By Jim Henry
            "Jim Henry."

———◆———

Shortly after the execution of the construction contract Cahoon entered into an arrangement with Trowbridge whereby the latter agreed to perform the work of drilling and shooting rock for the purpose of providing footings and foundations for the hospital building. Trowbridge was to be paid at the rate of $2.00 per cubic yard for drilling and excavation of the rock and his employment for that purpose was evidenced by documents issued to him on a purchase order form used by Cahoon generally for the purchase of materials. Trowbridge employed two or three other men to help him with the work. He paid them from the sums collected at the agreed piece-rate from Cahoon. Cahoon was required to file a weekly payroll report but it does not appear that Trowbridge or his helpers were listed as employees by Cahoon. Trowbridge filed his own payroll reports. Cahoon testified that Trowbridge did all of his work under the direction of Pope who was Cahoon's superintendent on the job, and who not only told Trowbridge

what to do but how to do it. According to Cahoon he regarded Trowbridge as a mere employee and not as an independent contractor.

The trial court found that Trowbridge was a subcontractor and not a mere employee of Cahoon. This finding was based not upon the Judge's evaluation of the evidence with respect to Trowbridge's agreement with Cahoon and the manner in which Trowbridge performed it, but upon the court's conclusion that the State court in the cases in which Meyer and Pope recovered their judgments against Trowbridge had decided that the latter was a subcontractor and that such decision was res judicata as to the defendant insurance company.

The evidence disclosed that Cahoon had previously engaged in a course of dealings with the agents for the insurance company whereby the latter always furnished him with his bond and insurance requirements. They had furnished him the policy of insurance described in the certificate of insurance previously mentioned. It was dated January 1, 1955, prior to the date when Cahoon's bid on this job had been accepted. They did not issue any policy of liability insurance in connection with this construction work other than the single policy described in that certificate, and no such insurance policy for the protection of Trowbridge or any other subcontractor was executed by them.

Prior to the time when the contract was signed and the performance bond and the certificate were issued, the agents for the Insurance Company were furnished with copies of the specifications mentioned above and they were familiar with the requirements of § 21.(c) previously quoted. It was stipulated that the certificate of insurance above described was furnished to the State of Idaho for the purpose of complying with the requirements of the contract, and was accepted by the State as complying with those requirements. Cahoon testified that in undertaking to satisfy the requirements of the State with respect to the insurance, he left that matter to the insurance company agents who had acted in similar capacities before and that under his arrangement with them it was their responsibility to see that the necessary bond and insurance coverage was provided. The specifications had been furnished the insurance agents for that purpose. When asked: "If the conditions or the contract or the specifications require certain coverages the agent provides them in addition to your general coverage that you carry all the time?" Cahoon answered: "That's right. Where there is specific liability."

As previously stated, at the meeting when the contract was executed there were present Cahoon, the State Commissioner of Public Works, some United States Public Health officials, and the Insurance Company's agents. The certificate above mentioned, and the payment and performance bonds, signed by appellant, were all furnished at the same time. Cahoon's signature on the general contract was witnessed by the insurance company's agent.

The trial court, in addition to finding that Trowbridge was a subcontractor, found that the Insurance Company was provided with a copy of the specifications and was fully informed with respect to the requirements relating to the liability insurance; that the certificate of insurance was furnished "as part of the execution of said contract for the purpose of certifying and warranting to the State of Idaho that W. R. Cahoon Construction Company and defendant, as its insurer, had complied with the requirements of said contract and the specifications, being a part thereof, and particularly the requirements thereof relating to liability insurance, being Section 21.(c) of Section 1 of said specifications."

The court found in each case that the plaintiff had been injured on May 3, 1955, in an accident resulting from the negligence of Trowbridge; that each plaintiff brought suit in the district court of the State of Idaho to recover damages from Trowbridge, alleging that he was a subcontractor; that Trowbridge had

timely tendered defense of each action to defendant Insurance Company, which refused the tender; that the State court found that Trowbridge was a subcontor; that said subcontractor was negligent and that the personal injuries were received in consequence thereof, and that Meyer recovered judgment in the State court in the sum of $120,000 and Pope recovered a like judgment for $145,000.

The court held that by reason of that adjudication Trowbridge must be held here to be a subcontractor; that Cahoon as contractor was required to take out and maintain bodily injury liability insurance such as would protect the contractor and any subcontractor under him for damages for personal injuries which might arise from operations under the contract; that the Insurance Company had issued its certificates relating to insurance purporting to evidence full compliance with the requirements of the contract; and that thereby it "bound and committed itself and warranted that it had provided bodily injury liability insurance as required by the specifications of said contract * * * which would protect the contractor and any subcontractor. * * *" The court concluded that Trowbridge was insured against the plaintiffs' claims and judgments for damages.

In the Meyer case the plaintiff was awarded judgment for the $120,000 plus costs plus interest and attorneys' fees, less the sum of $12,560.40 which had been paid by the Insurance Company to Meyer under the Workmen's Compensation Law of the State of Idaho, I.C. § 72–101 et seq. In the Pope case the judgment against the defendant Insurance Company was for $145,000 plus costs and interest plus attorneys' fees less the sum of $13,910.87, the amount paid to Pope by the Defendant under the Workmen's Compensation Law of the State.

The district court below had two questions to determine: First, whether Trowbridge was in fact a subcontractor rather than a mere employee of Cahoon. (If the latter were the case, then of course since Pope and Meyer were both employees of Cahoon, their only remedy would be under the Idaho's Workmen's Compensation Law. White v. Ponozzo, 77 Idaho 276, 291 P.2d 843.) Second, whether Trowbridge was entitled to personal injury coverage from the insurance company by reason of the contracts and the conduct of the parties here mentioned.

As above noted, while there is evidence which might support either theory as to Trowbridge's capacity,—whether he was an independent contractor or an employee,—yet the court did not undertake itself to resolve that question on the basis of testimony, but rather held that that matter became res judicata in consequence of the judgments recovered by these two parties in the State court.

It is plain that the court's finding as to res judicata is dependent upon the answer to the second question, namely, whether a subcontractor was entitled to insurance protection from the Insurance Company. If he was not, then of course the judgments of the state court could not be treated as res judicata against the Insurance Company for the latter would not owe any duty to defend the State court action. But if the court's answer to the second question is correct, then it could be said that since under all those circumstances the insurance company owed the duty of defense of those actions and failed to make defense when it should have done so, then the judgment would be binding upon the insurance company. Washington Gaslight Company v. District of Columbia, 161 U.S. 316, 329, et seq., 16 S.Ct. 564, 40 L.Ed. 712.

It is thus apparent that we must first come to grips with the second question above stated: whether or not the insurance company was under an obligation to provide protection against the personal injury liability for Trowbridge.

It has long been the recognized law that an insurance company may be prevented through waiver or estoppel from asserting forfeiture of insurance policies by reason of breaches of warranties and conditions in the policies.

Couch on Insurance, 2d ed., Vol. 7, § 35:-270. We had occasion to refer to these as "a multitude of cases" in Ivey v. United National Indemnity Co., 9 Cir., 259 F.2d 205, 207, where we refer to a collection of such cases in a note in 113 A. L.R. 857. Most of those cases draw a distinction between a claim of estoppel to assert a breach of warranty or condition, and a claim of estoppel to prevent the insurance company from maintaining that certain risks are not covered by the policy. But as we there noted, the general rule that the conduct of an insurance company may not be relied upon to establish that it is estopped from denying that certain risks, not mentioned in the policy, are nevertheless within the liability for coverage assumed by the company, is not without exceptions. We also noted that the California decisions have adopted what is apparently a minority view; and we quoted from one of these decisions the statement of the California view as follows (p. 209): "But where, as here, the insurer makes a promise to write a certain specific coverage, the insured is entitled to rely thereon and the insurer is estopped from taking a different position. It will not be claimed that such is the rule in all jurisdictions * * but it is the rule in many jurisdictions, including this state."

Upon this point the State of Idaho has gone along with the California view and has held that an insurance company, may through the conduct of its agents, be held liable for the coverage of the personal liability of a person not only not named as an insured in a policy, but actually *expressly excluded* by the terms of the written policy. Collard v. Universal Automobile Ins. Co., 55 Idaho 560, 45 P.2d 288.[2]

This brings us to a consideration of the facts in this case and to a determination of the question whether those facts warrant the findings and conclusions of the trial court.

To begin with, we note here that the Insurance Company did in fact undertake to furnish this public liability coverage for subcontractors on the job. On March 17, 1955, when Cahoon signed the

---

**2.** In that case one Gilderoy, owner of an automobile, secured from the insurance company a policy of insurance insuring Gilderoy against public liability. Gilderoy initiated a proposed sale of the automobile to one Peterson who gave Gilderoy a check for a down payment in the sum of $100. This was on a Friday, and it was understood that if the check was not paid on the following Monday, the automobile was to be returned. On Saturday morning Peterson, who had the car, inquired about the insurance and Gilderoy and Peterson went to the office of the insurance company's agent who was told that Peterson wanted the insurance before he made a trip to Boise. The policy provided "All rights hereunder are strictly personal to the Assured named in this policy, and this policy shall terminate immediately if there is any change, voluntarily or otherwise, in the ownership or interest of such Assured in this policy or in the automobile insured hereunder." The agent was told that if the check was paid and the contract approved by the finance company on Monday the deal for the purchase would then be concluded. The agent said: "All right, the policy will be in force." The agent also stated: "That will be all right, there is no use bringing the policy in now, I will fix it up Monday morning." The agent was told that Peterson wanted to be sure of insurance on the car. Following this conversation Peterson started for Boise in the automobile and on the way had a collision with the truck in which Collard was injured. Collard recovered a judgment against Peterson which was not satisfied and brought this action against the insurance company. The Idaho court held (45 P.2d p. 293): "The evidence was sufficient to justify the finding of the jury to the effect that appellant, through its agent, had full knowledge of all the facts of the change of ownership, and, being in possession of such knowledge, through its agent, waived the provision of the policy with reference to change in ownership, and the legal effect was to continue the policy in force under the changed conditions." It will be noted that the court held that the insurance company by its conduct had made itself responsible for coverage of the liability of Peterson who not only was a person not named in the policy but was a person who under the express terms of the policy clause above quoted was prohibited from claiming coverage.

contract with the State of Idaho in the presence of the agent for the Insurance Company, who simultaneously delivered a payment bond and performance bond and the certificate of insurance above mentioned, he, Cahoon, as contractor, undertook to perform the conditions of the contract and of the specifications which included the requirement that he provide the stipulated public liability coverage for subcontractors; and the performance bond, simultaneously delivered by the insurance company in the penal sum of $491,236, undertook that the contractor would "well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract."

There can be no doubt under the facts of this case that the requirement of liability insurance covering both the contractor and his subcontractor was a significant and important term of the contract. Not only would the State of Idaho insist upon the performance of this contract, but in view of the fact that the federal government had imposed the specifications above referred to, it seems plain that it would not have tolerated any failure to comply with its provisions. As stated by this court, United States Fidelity & Guaranty Co. v. Doheny, 9 Cir., 123 F.2d 746, 748, when discussing a similar provision in a state contract for highway construction, "It is to be assumed that it was a matter of state policy to require the carrying of public liability insurance as a measure of precaution against possible financial irresponsibility on the part of contractors." And, in the case before us, it is plain that the State of Idaho was as much concerned as a matter of State policy to see that persons injured through the negligence

of subcontractors be protected as it was with respect to persons injured by the negligence of general contractors.

There is authority to the effect that if Cahoon failed to procure liability insurance covering his subcontractors and thus breached his contract with the State of Idaho, a party injured through the negligence of the subcontractor could recover his damages from Cahoon. See James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, (reported with an attached annotation at 22 A.L.R.2d 639).[3]

Of course this action was not predicated upon any such theory, but the fact that the performance bond was furnished by the Insurance Company; the fact that it could justly consider that if Cahoon failed to provide the insurance for the subcontractors, the Insurance Company, as Cahoon's bondsman, might be looked to in the event of such breach, is significant as bearing upon the understanding of the Insurance Company that coverage for the subcontractors was expected and required.

We have great difficulty in attempting to distinguish the facts of the case before us from those presented by our decision in United States Fidelity & Guaranty Co. v. Doheny, 9 Cir., 123 F.2d 746. In that case the highway department of the State of Montana let a contract for construction of a section of a highway in which the contractor was required to carry public liability insurance to indemnify the public for injuries or damages sustained by reason of the carrying on of the work. The contractor was also required to furnish a surety bond for faithful performance of the contract. The insurance company wrote the performance bond for the contractor

---

3. Judgment against the contractor was predicated upon the latter's obligation under his contract to see that all subcontractors carried liability insurance. The contractor failed to require a certain subcontractor to carry any insurance, and the latter's negligence caused injury to plaintiff. It was held that the contractor had breached its contract under which the injured party was a third party beneficiary.

Dissents in this case were based upon the view of the judges that the contractor had assumed no obligation to provide coverage for subcontractors. Mowrer v. Porier & McLane Corporation, 382 Pa. 2, 114 A.2d 88, decided by a closely divided court, appears to be contra. We agree with the author of the annotation that the Texas case cited was correctly decided.

and also issued a public liability policy. The contractor was required to submit evidence to the Commission that he had taken out such insurance and the contractor was asked to furnish a letter from the insurance agent who furnished the policy. The insurance company forwarded to the Commission the performance bond stating: "We have issued contractor's public liability policy PC–19715 for this assured," ·and specifying the policy limits. The policy itself was not furnished to the Commission. As issued it contained a provision that it did not cover liability for injuries or death caused "elsewhere than at the immediate places * * * where the insured is carrying on his operations." The operations referred to were certain bridges which the contractor was constructing and which were scattered at intervals along the highway. An employee of the contractor was driving along the highway in an automobile operated for the contractor. He had as his guests in the car two ladies and at a point some 12 miles distant from the nearest bridge he had a collision which resulted in the death of one of these women. Her administratrix recovered a judgment against the contractor. The judgment not being paid an action was brought against United States Fidelity & Guaranty Co. to obtain satisfaction of that judgment. The trial court rejected the claim of the company that its policy did not cover an accident at the place where this one occurred by reason of the provision referred to. It asserted that the accident was outside the policy coverage. The court held that the company was responsible as an insurer notwithstanding that exclusionary clause. This court affirmed. We held that the letter to the Commission "was calculated to induce that body to believe that a policy had been issued to the contractor as broad as that described in the specifications." This court noted that the insuring company "was fully advised of the broad requirement contained in the agreement, the performance of which it had guaranteed." We said: "Under the circumstances appellant will not be heard to say that the policy it actually wrote was less comprehensive than the requirement, giving to the latter a fair and reasonable interpretation. To hold otherwise would virtually amount to the sanctioning or encouragement of frauds upon the state, and through the state upon its people and others within its borders. We are persuaded that the courts ought not lend their aid to such practices."

The same considerations apply here. This Insurance Company was fully aware of the requirements of the contract with respect to the provision of coverage for subcontractors. It knew that it had guaranteed that performance, and promised that such insurance would be forthcoming. It knew that the contractor had relied upon the insurance company to supply the necessary insurance coverage; it knew that the State expected to have such insurance coverage provided. It must have known that it would be unthinkable to attempt to carry through and perform the contract with such coverage of subcontractors not provided. We are of the opinion that the facts of the case, therefore, warranted the court's finding that the conduct of the Insurance Company through its agent in presenting the certificate of insurance, together with payment and performance bonds, and otherwise participating in the execution of the contract, were acts performed for the purpose of certifying and warranting to the State of Idaho that Cahoon and the Insurance Company, as its insurer, had complied with the requirements of the contract and the specifications relating to liability insurance.

Appellant contends that no one could have understood that the certificate of insurance was a certificate that subcontractors were in fact covered by the policy there described. It is contended ، that it would have been wholly impractical to have issued a policy such as that described in this certificate with an omnibus clause providing insurance for all subcontractors who might thereafter be employed. At the time of the execution of the contract there were no such per-

sons. There is some evidence that such policies were never issued by this company, in part because since the identity of the subcontractors could not be then specified, it would be impossible to ascertain or fix the rate upon which such a policy could be issued.

A somewhat similar argument was made in Ivey v. United Indemnity Insurance Co., supra, where it was argued that the enlarged coverage claimed by the insured would have called for a larger premium than that actually paid. We held (259 F.2d 205, at 208) that this circumstance was immaterial. Here, of course, the fact that an examination of the certificate shows that neither the name of Trowbridge nor of any other subcontractor appeared in the certificate, is not conclusive of this case. An examination of the policy of insurance actually issued would have shown no provision for subcontractors. Like circumstances existed in the cases to which we have referred.

In the Ivey case, supra, the policy actually issued did not cover the risk for which the company was finally held to be actually responsible. The policy in the Collard case, supra, when actually examined, not only did not mention Peterson's name, but it contained an express clause excluding any such person. And in the Doheny case, supra, an examination of the policy would show that accidents at the place where this one occurred were expressly excluded from the policy. But in each of these cases recovery was based upon a representation; and in the light of these decisions we cannot say that the absence of any reference to subcontractors in the written policy would conclusively negative appellant's liability.

The sum of the matter is that the facts of this case call for the application of the rule which we enforced in Ivey v. United National Indemnity Co., supra, and which we there quoted from the California case of Ames v. Employers Casualty Co., 16 Cal.App.2d 255,

60 P.2d 347, 352, as follows: "But where, as here, the insurer makes a promise to write a certain specific coverage, the insured is entitled to rely thereon and the insurer is estopped from taking a different position. It will not be claimed that such is the rule in all jurisdictions * * * but it is the rule in many jurisdictions, including this state." (259 F. 2d, p. 209)

It seems plain further that the estoppel here extends not merely to the representation as to coverage of subcontractors, but it extends by virtue of the issuance of the certificate of insurance to the specific policy itself. We noted that the certificate above quoted contains the statement "all operations covered". Upon receipt of that certificate the State of Idaho had the right to rely upon the apparent meaning of that language to the effect that the liability under that policy would extend to the protection of all subcontractors which the main contract with the State required the contractor and his bondsman to supply.

We have indicated above that the estoppel involved is not affected by the question whether an enlarged premium would have to be collected from Cahoon if and when subcontractors were employed, or whether that coverage would have to be accomplished by the attaching of riders or additions to the policy itself. And it may be conceded that the words "all operations covered" may well lack some degree of clarity or definiteness or specificity. But this language is the language of the Insurance Company, and the State and the other interested parties were entitled to have it construed most strongly against the Company.

The result is that these injured parties had the same rights as those stated in this particular policy, including that stating: "Any person or organization or the legal representative thereof who has secured such judgment * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.[4] This also

4. As to the effect of such a provision, see the cases collected in 46 C.J.S. Insurance § 1191, pp. 109–111.

means that the policy limits on recovery may be relied upon by these plaintiffs.

It is contended that there was no reliance upon this certificate or upon the acts and conduct of the Insurance Company to which we have previously referred, and hence that no estoppel could be claimed. We think that such argument is without merit. The State of Idaho, Cahoon, and the subcontractors carrying on operations pursuant to the contracts with Cahoon, obviously relied upon the assurance that the required insurance had been or was to be supplied. Were it not for all these circumstances and the assumption that all necessary documents and coverages had now been provided, the State, it is fair to say, would not have entered into this contract, nor would Cahoon have commenced work, nor would any subcontractor.

The trial court concluded that the State of Idaho had received and accepted the documents provided by the Insurance Company "as full compliance with the requirements and obligations of said contract"; it concluded that under the circumstances the Insurance Company "bound and committed itself and warranted that it had provided bodily injury liability insurance as required by the specifications in said contract * * * which would protect the contractor and any subcontractor performing work covered by said contract. * * *"

We think it is of no significance whether this language was intended to mean that the Insurance Company promised to provide the necessary insurance coverage or whether it is intended to indicate that the Insurance Company represented and warranted that it had already provided that coverage. If we assume that the parties contemplated that there would not be any omnibus clause in the policy purporting to cover all and any subcontractors who might subsequently become such, but rather that subsequent riders would have to be provided and written specially for each subcontractor as and when he entered into his arrangement with Cahoon, then the only criticism that could be made of the court's use of the words "had provided" in the conclusion last quoted, would be that this conclusion should have been that the Insurance Company "bound and committed itself and warranted that it had provided, *or would provide*, bodily injury liability insurance as required by the specifications," etc.

We have noted that the court below, without making its own finding on the facts as to whether Trowbridge was a subcontractor, held that this question was settled by the decision in the state court which had found that he was a subcontractor; that such decision had become res judicata.

Of course, if the court below were wrong as to this question of res judicata, this case would have to be remanded so that the court could make its own findings from the evidence upon the question of Trowbridge's capacity. As we have found the Insurance Company owed a duty to indemnify subcontractors. The rule is settled that one under a duty to indemnify another is also under a duty to defend an action against the latter, and the indemnitor is bound by the judgment in the action against the indemnitee, whether he defends or whether he declines to defend, provided he had notice and an opportunity to defend. Washington Gaslight Co. v. District of Columbia, supra.[5]

5. See Restatement of the Law of Judgments, § 107(a): "In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against (a) the indemnitee, both are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense."

See also "Comment c. * * * since by hypothesis his is the ultimate liability, it is fair that the indemnitee should be able to throw off the burden of the trial and that the indemnitor should respond

Appellant asserts this rule has no application here, citing certain cases including Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P.2d 378, 380, which approve the rule stated in that case, as follows: "From these decisions, constituting the great weight of authority, the duty of an insurer under an automobile liability policy to defend an action for damages against its insured is not measured by the proof which may be adduced at the trial nor by the outcome of the litigation but by the allegations of the petition or complaint in the action and by the terms and provisions of the insurance contract."

We think the language there quoted has no application to this case. In the Kansas case cited, the duty to indemnify depended solely upon the express language of the policy. Such is the ordinary situation with which a liability insurance company has to deal. It first examines the policy to see what risks it has insured; it then examines the complaint against the person insured. If the complaint states facts coming within the risks insured against, the company must defend the action. But here, as we have noted, appellants' duty of indemnity is not limited by the language of the policy described in its certificate. Its duty to indemnify subcontractors derives from the certificate of insurance and the other circumstances mentioned, and the representations inferred from its conduct. All of these matters were well known to appellant. It was chargeable with knowledge that it had assumed

this liability, or was estopped to deny that liability to indemnify subcontractors. And when Pope and Meyer sued Trowbridge,[6] and made therein the allegation in their complaints that Trowbridge was a subcontractor on the job, appellant knew it owed the duty to defend.

Appellants have failed to note that the duty to indemnify may arise from sources other than the express language of the policy. And in Washington Gaslight Co. v. District of Columbia, supra, 161 U.S. at p. 330, 16 S.Ct. at 569, the Court indicated the breadth of the rule by quoting with approval the following language: "When a person is responsible over to another, *either by operation of law* or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not." (Emphasis added.)

We have previously noted, citing the Idaho case of White v. Ponozzo, that the fact that Trowbridge was a subcontractor was essential to the maintenance of the state court actions, and the allegations and findings to this effect were material therein.[7] The court below cor-

---

to a request for assistance by the indemnitee. If he fails to give this assistance at the time when it is of greatest importance, it is fair that he should abide by the result of the trial."

And from "Comment f. * * * The rule stated in this section applies, therefore, even though the judgment against the indemnitee is by default. * * *"

6. Appellees' right to maintain the State court suits, notwithstanding their receipt of Workmen's Compensation payments is not challenged here. In Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054, their right to do so, where the employer fails to claim

subrogation and bring the suit, was upheld.

The right of appellant to a deduction of the amounts of compensation paid from the awards here is not questioned.

7. The situation here is similar to that which arises when coverage in an automobile insurance policy is dependent upon whether the car was being operated by a driver who had the owner's consent to use it and the tort action by the injured party had determined who the driver was. In such cases the insuring company has been held bound by that finding. See Maryland Casualty Co. v. Lopopolo, 9

rectly held that finding binding upon this appellant.

We hold therefore, that the court below correctly arrived at the conclusion that Trowbridge must be held to be a subcontractor; that as such he was entitled to coverage by the policy referred to in the certificate, and that these appellees were entitled to maintain these actions.

The judgment is affirmed.

Cir., 97 F.2d 554, 556: "Donato brought suit and obtained judgment against appellee upon the theory or claim that Jack Lopopolo was operating appellee's automobile at the time of the collision. That judgment is now final and conclusive." See also, Ford v. Providence Washington Insurance Co., 151 Cal.App.2d 431, 311 P. 2d 930, 932.